[Crim. No. 16915. In Bank. Oct. 21, 1974.]

THE PEOPLE, Plaintiff and Appellant, v.
WARNER HERBERT HITCH, Defendant and Respondent.

## Counsel

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Frederick R. Millar, Jr., and Howard J. Schwab, Deputy Attorneys General, C. Stanley Trom and Woodruff J. Deem, District Attorneys, and Nancy Sieh, Deputy District Attorney, for Plaintiff and Appellant.

Roger W. Borrell for Defendant and Respondent.

Richard S. Buckley, Public Defender (Los Angeles), Harold E. Shabo, Deputy Public Defender, Renzi & Kilbride and Fred Kilbride as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**SULLIVAN, J.**—Defendant Warner Herbert Hitch was arrested on September 10, 1970, for driving a motor vehicle while under the influence of intoxicating liquor. (Veh. Code, § 23102.) In fulfillment of his implied consent to a chemical test of his blood, breath or urine for the purpose of determining intoxication (Veh. Code, § 13353), he chose to submit to a test of his breath and the arresting officer administered a breathalyzer test to him at the jail.

The breathalyzer used in the test is an electrically powered apparatus designed to calculate the extent of alcohol in the suspect's circulatory system. The suspect blows into a tube and a sample of his breath is trapped inside the machine. The trapped sample is then permitted to bubble through a glass test ampoule containing three cubic centimeters of 0.025 percent potassium dichromate in a 50-percent-by-volume sulphuric acid solution which acts as a reagent to any alcohol suspended upon the suspect's breath. If alcohol is present in the sample, it produces a change in the color and the light transmissibility of the solution. Upon the passage of a light beam through the test ampoule, the relative light transmissibility of the solution is registered on a meter which calculates the percent of alcohol in the suspect's blood.

The machine is calibrated so as to provide a reading by establishing a correlation between the test ampoule and a reference ampoule which is identical in specification. It is essential to the accuracy of the test that a quantity of exactly three cubic centimeters of the solution be present in each. This is checked by a gauge in the machine and a test ampoule not meeting the requirement is discarded.

In administering the breathalyzer test to defendant, the officer followed the standard procedures outlined above. The test showed a blood alcohol level of 0.20 milligrams percent. At the conclusion of the test, the officer poured the contents of the test ampoule into a glass bottle and threw away the ampoule itself. He then delivered the bottle to the Ventura County

crime laboratory which according to its established policy eventually disposed of the contents.

Prior to trial, defendant moved to suppress the results of the breathalyzer test on the ground that the destruction of the test ampoule and its contents deprived him of due process of law. After a hearing at which it received expert testimony concerning the breathalyzer test, the court found the facts as to the operation of the apparatus and the method of conducting the test to be substantially as we have recounted them above and that "given the availability of the reference ampoule, another reference ampoule of the same ampoule lot, the test ampoule and contents, and of the bubbler tube" it was possible to actually retest the chemical change that had occurred in the contents of the test ampoule during the test.[1] The court concluded that preservation of the test ampoule, its contents the bubbler tube and the reference ampoule would provide information of value to both the prosecution and the defense; that the intentional but nonmalicious destruction of these items deprived defendant of due process of law by making valuable evidence unavailable; that Vehicle Code section 13354 required preservation of such items, that the results of the breathalyzer test should be suppressed and that the action should be dismissed pursuant to Penal Code section 1385.

Accordingly, the court granted defendant's motion to suppress and dismissed the action. This appeal by the People followed.[2]

■ We start with the settled rule that the intentional suppression of material evidence favorable to a defendant who has requested it constitutes a violation of due process, irrespective of the good or bad faith of the prosecution. (*Giglio* v. *United States* (1971) 405 U.S. 150, 153-154 [31

[1] In its detailed findings the court found inter alia that it is always possible to retest the ampoule and contents to determine if it conforms to specifications and if it contained the requisite three cubic centimeters of solution; that it is always possible to determine whether there was in fact a 0.025 percent potassium dichromate solution; that optical defects in the glass of the test ampoule and of the reference ampoule may have an effect on the accuracy of the test; and that the accuracy of a retest will depend upon factors such as the time elapsed since the actual test, the manner in which the test ampoule and solution have been stored, and the continued chemical change in the contents of the test ampoule and that upon a retest the original test cannot be duplicated with 100 percent accuracy.

[2] The Appellate Department of the Superior Court of Ventura County reversed the judgment of dismissal. Upon certification by that court that a transfer of the case to the Court of Appeal appeared necessary to secure uniformity of decision and to settle important questions of law, the Court of Appeal, Second Appellate District, ordered said case transferred to it for hearing and decision. (See Cal. Rules of Court, rule 61 et seq.). Division One of said Court of Appeal reversed the judgment of dismissal and remanded the cause to the municipal court for trial. We granted a hearing in this court.

L.Ed.2d 104, 108, 92 S.Ct. 763]; *Brady* v. *Maryland* (1963) 373 U.S. 83, 87 [10 L.Ed.2d 215, 218, 83 S.Ct. 1194]; *In re Ferguson* (1971) 5 Cal.3d 525, 532 and cases there cited [96 Cal.Rptr. 594, 487 P.2d 1234].)

In *Brady,* the defendant and a companion Boblit were found guilty of murder in the first degree in separate trials and sentenced to death. At his trial Brady took the stand and admitted his participation in the crime, but claimed that Boblit had done the actual killing. In his summation to the jury, Brady's counsel conceded that the defendant was guilty of first degree murder, asking only that the jury return a verdict "without capital punishment." Prior to trial Brady's counsel had requested the prosecution to permit him to examine Boblit's extrajudicial statements in their possession. In response to the request the prosecution had shown him several statements but withheld one in which Boblit admitted doing the actual killing. Brady discovered this after his trial. The high court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (*Brady* v. *Maryland, supra,* 373 U.S. 83, 87 [10 L.Ed.2d 215, 218].)

In both *Giglio* and *Ferguson* the suppressed evidence, held to be material, had a bearing on the credibility of the key prosecuting witness. In the former the prosecution failed to disclose an alleged promise to the key witness that he would not be prosecuted if he testified for the government; in the latter the prosecution failed to disclose the witness's arrest and sex commitment record.

In *Ferguson,* relying on *Brady* and decisions of this court declaring the same rule,[3] we held that the suppression by the district attorney in a prosecution for kidnaping and sexual offenses of evidence as to the victim's husband's arrest record and commitment to state hospitals as a sex degenerate deprived the defendant of a fair trial even though he had made no request for the production of the evidence. On the last point we explained: "Although a request for production of evidence may be a factor to consider in determining a charge of suppression of evidence, we have recognized that 'in some circumstances the prosecution must, without request, disclose substantial material evidence favorable to the accused.' (*In re. Lessard, supra,* 62 Cal.2d 497, 509.) Conditioning the duty to disclose and produce evidence upon request would mean that the duty to disclose would be in-

[3]See *In re Ferguson, supra,* 5 Cal.3d at p. 532 which cites among others our opinions in *In re Lessard* (1965) 62 Cal.2d 497, 508 [42 Cal.Rptr. 583, 399 P.2d 39] and *In re Imbler* (1963) 60 Cal.2d 554, 567-570 [35 Cal.Rptr. 293, 387 P.2d 6], both of which relied upon *Brady.*

applicable to numerous situations where the failure to disclose would deprive the accused of a fair trial." (*In re Ferguson, supra,* 5 Cal.3d at p. 532.)

In *Brady, Giglio* and *Ferguson,* the suppressed evidence was neither lost nor destroyed but remained continuously in existence. Upon review of the entire record on appeal or post conviction review, the court was in a position to examine the suppressed evidence, decide whether or not it was favorable to the accused and ultimately to determine whether or not it was material by "look[ing] to the entire record . . . in the light of the circumstances . . . consider[ing] not only the other evidence of guilt but also any other defense evidence . . . ." (*In re Ferguson, supra,* 5 Cal.3d 525, 533.) In these contexts, if the defense has failed to establish that the suppressed evidence is material, the court may reach the conclusion that its nondisclosure did not affect the fairness of the trial and therefore did not constitute a denial of due process. Conversely, if the defense has established that the suppressed evidence is material, the court may then conclude that there has been a denial of due process, that the conviction should be reversed and that the cause be remanded for a new trial at which defendant will be able to present his defense with full access to the material information.

Turning to the case at bench, we first observe that the *results* of the breathalyzer test by their very nature constitute material evidence on the issue of guilt or innocence upon a charge of drunk driving. We need only point to section 23126 of the Vehicle Code, which provides inter alia that if the amount of alcohol in a person's blood at the time of the test as shown by chemical analysis of his blood, breath or urine was 0.10 percent or more by weight, "it shall be presumed that the person was under the influence of intoxicating liquor at the time of the alleged offense."[4] Thus corresponding to the situations in *Giglio* and *Ferguson,* evidence substantially affecting the credibility of the *results* of the test would appear to be material and the suppression of such evidence would deny defendant a fair trial.

However, in the case before us the suppressed evidence, namely the test ampoule and its contents, and the reference ampoule, has been destroyed. Unlike the courts in the three cases just referred to, we do not have this critical evidence in the record before us so that we can determine whether it would have been favorable to defendant and material to the issue of his

---

[4]See section 23126 which provides in detail that the amount of alcohol as determined by the test shall give rise to various presumptions "affecting the burden of proof."

guilt or innocence. (See *United States* v. *Bryant* (1971) 439 F.2d 642, 647-648 [142 App.D.C. 132].) Nor can we decide these issues by reference to the findings of the municipal court. Although, as set forth at the beginning of this opinion, it concluded that the preservation of the test ampoule and its contents, the reference ampoule, and the bubbler tube will provide information of value and that the destruction of evidence of value to the defense can only operate to deprive defendant of a fair trial, the municipal court could not and did not decide that the *specific evidence* which was destroyed was both favorable to defendant and material to the issue of guilt or innocence.

We must therefore decide by what principles a court should determine a defendant's claim for relief where, as here, the evidence subject to disclosure is no longer in existence and the court is therefore unable to ascertain whether such evidence was, or would have been, favorable to the defendant and material on the issue of his guilt or innocence.

In another but cognate context, we have applied and enforced a rule governing the failure or refusal of the prosecution to disclose the identity of an informer where under similar circumstances it cannot be established that the informer's testimony, which is of course unknown, is favorable and material.

To provide relief to the defendant in these situations we have consistently expounded and applied the following rule: "When it appears from the evidence that an informer is a material witness on the issue of the defendant's guilt, the informer's identity may be helpful to the defendant and nondisclosure would deprive him of a fair trial. The People must either disclose his identity or incur a dismissal. (*Price* v. *Superior Court,* 1 Cal. 3d 836, 842-843 . . .; *Honore* v. *Superior Court,* 70 Cal.2d 162, 167 . . .; *People* v. *McShann,* 50 Cal.2d 802, 808 . . . .)" (*People* v. *Hunt* (1971) 4 Cal.3d 231, 239 [93 Cal.Rptr. 197, 481 P.2d 205].)

In all of these cases we recognized the impossible task which the defendant faced in seeking to show that the informer would be a favorable and material witness. As we explained in *Price,* "The defendant need not prove that the informer would give testimony favorable to the defense in order to compel disclosure of his identity, nor need he prove that the informer was a participant in or even an eyewitness to the crime. The defendant's burden extends only to a showing that "in view of the evidence, the informer would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial." [Citation.] "That burden is discharged, however, when defendant demonstrates a reasonable possibility that the anonymous informant whose iden-

tity is sought could give evidence on the issue of guilt which might result in defendant's exoneration. . . ." [B]y the very nature of the problem here confronting defendants it is impossible for them to state *facts* which would show the materiality of the informant's testimony. Since they do not know his identity they cannot possibly state factually what he will say if he is required to testify. All that defendants are required to do is to demonstrate "a reasonable possibility that the anonymous informant . . . could give evidence on the issue of guilt which might result in [their] exoneration." [Citation.]' " (Original italics.) (1 Cal.3d at p. 843.)

We find the problem of nondisclosure in these cases closely analogous to the one now before us. There, as here, the nondisclosed evidence was in a real sense "lost" to the defendant, as effectively as if it had been destroyed. While we deal here with demonstrative evidence (Evid. Code, § 140) rather than with the testimony of living witnesses, we find the difference of no significance since if it were available and disclosed it would normally require the testimony of a living witness to facilitate its introduction and possibly to explain it. Accordingly just as in the instance of the informer a defendant seeks a witness who might give favorable evidence on the issue of guilt or innocence, so in the present situation a defendant seeks demonstrative evidence which might be favorable to him on the issue of his guilt or innocence. In the former situation, the evidence is lost to the defendant as a result of being withheld by the state's exercise of its privilege against disclosure. In the instant situation, the evidence is lost to the defendant by having been destroyed by the authorities. In the former situation we have said that if the defendant has shown that there is a *reasonable possibility* that the anonymous informant could give favorable evidence on the issue of guilt or innocence, his identity must be disclosed. **(3)** Applying this rationale to the case before us, we are of the view that if, given the availability of the test ampoule and its contents, and the reference ampoule, there is a reasonable possibility that they would constitute favorable evidence on the issue of guilt or innocence, then such evidence must be disclosed.

As previously stated the trial court concluded that the test ampoule, its contents, the reference ampoule and the bubbler tube used in the original test, would if preserved, provide information of value to both the prosecution and the defense. Contrary to the People's claim, this conclusion is supported by the findings and the evidence. Since there is a reasonable possibility that the above components of the testing device and their contents would impeach the accuracy and credibility of the results of the test, they constitute material evidence on the issue of the defendant-driver's guilt or innocence. We are, therefore, satisfied that if this evidence were

available, due process would require its disclosure. We are also satisfied that if this evidence were available and not disclosed and if the cause had proceeded to trial and defendant had been convicted, due process would have required a reversal with a direction to the prosecution to disclose it for use on retrial. But since in fact this material evidence has been destroyed and can never be produced, the People urge that any duty on their part to disclose has been dissolved and they have been fully and finally exonerated from any consequences of this state of affairs, essentially on a theory of impossibility of compliance.

We reject this contention and the theory upon which it is grounded. As was said in *United States* v. *Bryant, supra,* 439 F.2d 642, 651, "It is most consistent with the purposes of those safeguards [*Brady* and the federal discovery rules] to hold that the duty of disclosure attaches in some form once the Government has first gathered and taken possession of the evidence in question. Otherwise, disclosure might be avoided by destroying vital evidence before prosecution begins or before defendants hear of its existence. Hence we hold that before a request for discovery has been made, *the duty of disclosure is operative as a duty of preservation.*" (*United States* v. *Bryant, supra,* 439 F.2d 642, 651 (italics added).) This court also has recognized the same duty of preservation of evidence required to be disclosed under the due process requirements of *Brady.* The People's duty to disclose the identity of an informer who is a material witness on the issue of guilt includes the duty to "undertake reasonable efforts to obtain information by which the defense may locate such an informer." (*People* v. *Goliday* (1973) 8 Cal.3d 771, 782 [106 Cal.Rptr. 113, 505 P.2d 537]; *Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847, 853 [83 Cal.Rptr. 586, 464 P.2d 42].) In short the prosecution has a duty to undertake reasonable efforts to preserve the material evidence, to wit the testimony of the material informant.

However it does not follow that the sanction of dismissal which we have imposed upon the refusal of the prosecution to disclose official information in its possession as to the identity of an informer (see *People* v. *Hunt, supra,* 4 Cal.3d 231 and other cases cited, *supra*) is necessarily appropriate upon the failure of the prosecution to disclose information no longer in its possession due to loss or destruction or, to put it in other words, upon its failure to disclose such information because of its failure to preserve it. We observe that in similar situations the United States Supreme Court has held that the imposition and mode of sanctions depend upon the particular circumstances attending such loss or destruction.

In *United States* v. *Augenblick* (1969) 393 U.S. 348 [21 L.Ed.2d 537,

89 S.Ct. 528], respondent, a member of the armed services, was convicted by a court martial of committing an indecent act with another serviceman and dismissed from the service. Having exhausted the remedies available to him, he brought suit in the Court of Claims to recover his back pay on the ground that the court martial was constitutionally defective. When respondent and his companion were arrested, they were both interrogated at a naval station and a tape recording was made of the conversations. At the court martial upon motion of the defense, it was ordered that the government produce the tapes, or witnesses who could explain their non-existence. Thereafter several witnesses testified to the effect that there had been a tape but no one knew where it was or what had happened to it.

Reversing a judgment of the Court of Claims, the high court held that there had been no denial of due process constituting a defect in the court martial. Although the tapes were covered by the Jencks Act (18 U.S.C.A. § 3500), the court explained, "the Government bore the burden of producing them or explaining why it could not do so," an "earnest effort was made to locate them," extensive testimony was received as to the nature and existence of the tapes and as to "the Navy's routine in handling and using such recordings," and the "record is devoid of credible evidence that they were suppressed" (393 U.S. 348, 355-356 passim [21 L.Ed.2d 537, 544-545]) presumably meaning that they had not been suppressed in bad faith. (See *United States* v. *Bryant, supra,* 439 F.2d 642, 651, as so interpreting this phrase; see also *United States* v. *Sewar* (9th Cir. 1972) 468 F.2d 236.)

Similarly in *Killian* v. *United States* (1961) 368 U.S. 231 [7 L.Ed.2d 256, 82 S.Ct. 302], where a government agent's notes were destroyed after being incorporated into a report, the Supreme Court found no violation of due process since "if, after having served that purpose, they were destroyed by the agents in good faith and in accord with their normal practice, it would be clear that their destruction did not constitute an impermissible destruction of evidence nor deprive petitioner of any right." (*Id.* at p. 242 [7 L.Ed.2d at p. 264].)

In *United States* v. *Bryant, supra,* 439 F.2d 642, where a narcotics agent destroyed a tape recording of the critical conversation occurring during the narcotics transaction because it was allegedly unintelligible, the court, after discussing *Brady, Augenblick* and other cases synthesized their holdings in the following clear statement of the prosecution's duty, which we find extremely persuasive: "*Augenblick* not only makes clear that the circumstances of the tape's disappearance in these cases should be relevant to the question of proper sanctions. It also suggests that, while sanctions

should be imposed in cases of bad faith suppression of evidence, *an exception will be made for good faith loss. . . .* An exception for good faith loss of important evidence must not be allowed to swallow the discovery rules, and the *burden of explanation on the Government must be a heavy one;* but criminal convictions otherwise based on sufficient evidence may be permitted to stand *so long as the Government made 'earnest efforts' to preserve crucial materials and to find them once a discovery request is made.* [¶] For the future 'earnest efforts' will be defined quite strictly. The Supreme Court's references in *Augenblick* to the Navy's 'routine in handling and using such recordings' and in an earlier opinion to an exception for loss 'in good faith and in accord with . . . normal practice' suggests the *importance of regularity in the preservation of vital evidence.* Of course, the regular procedures for preservation must be adequate to the task; systematic non-preservation of tapes involving Government undercover agents—as in the cases before us—might be regular, but would be insufficiently protective of defendants' right to discovery. Accordingly, we hold that *sanctions for nondisclosure based on loss of evidence will be invoked in the future unless the Government can show that it has promulgated, enforced and attempted in good faith to follow rigorous and systematic procedures designed to preserve all discoverable evidence* gathered in the course of a criminal investigation. The burden, of course, is on the Government to make this showing. Negligent failure to comply with the required procedures will provide no excuse. . . . [¶] A right so crucial as that of disclosure ought not to be built on . . . shifting sands. It ought, rather, to be protected by rules, systematically applied and systematically enforced." (*United States* v. *Bryant, supra,* 439 F.2d 642, 651-652 (italics added); see Comment, *Judicial Response to Governmental Loss or Destruction of Evidence* (1972) 39 U.Chi.L.Rev. 542, 558-565; Note, *Discoverable Evidence,* 1971 Duke L. J. p. 644.)

We think that the rule declared by the federal court in *Bryant* provides a solution for the problem now before us involving the chemical test of a driver's breath (Veh. Code, § 13353). As we have explained, the test ampoule, its contents and the reference ampoule customarily used in the test constitute material evidence on the issue of the driver's guilt or innocence of the charge of driving a vehicle under the influence of intoxicating liquor. ■ We conclude that the investigative agency involved in the test has a duty to preserve and disclose such evidence. Accordingly we hold that, where, as here, such evidence cannot be disclosed because of its intentional but nonmalicious destruction by the investigative officials, sanctions shall in the future be imposed for such nonpreservation and nondisclosure unless the prosecution can show that the governmental agencies involved have established, enforced and attempted in good faith to adhere

to rigorous and systematic procedures designed to preserve the test ampoule and its contents and the reference ampoule used in such chemical test. The prosecution shall bear the burden of demonstrating that such duty to preserve the ampoules and their contents has been fulfilled. If the prosecution meets its burden and makes the required showing, then the *results* of the breathalyzer test shall be admissible in evidence, even though the ampoules and their contents have been lost.[5] If the prosecution fails to meet its burden then the court shall apply sanctions for nondisclosure. Finally we hold that in such latter event[6] due process shall not require a dismissal of the action but shall require merely that the *results* of the breathalyzer test be excluded from evidence.[7]

As pointed out in *Van Halen* v. *Municipal Court* (1969) 3 Cal.App.3d 233, 238 [82 Cal.Rptr. 140]: "Evidence of a breathalyzer or other chemical test is not a necessary element of a prosecution for drunk driving. Many defendants were tried and convicted of that offense long before chemical tests were discovered or used; since petitioner here was arrested before

---

[5]In *Covington* v. *Municipal Court* (1969) 273 Cal.App.2d 470 [78 Cal.Rptr. 563] the court held that because the destruction of the test ampoule by the police officer was in good faith, in accordance with standard procedure, and not tantamount to intentional suppression, there was no denial of due process. While this holding accurately applied the *Augenblick* good faith loss of evidence exception, the *Covington* court of course did not have the benefit of the subsequent opinion in *Bryant* holding that preservation of all material discoverable evidence is required by due process. Anything in *Covington* contrary to this opinion is disapproved.

[6]We do not address ourselves to the proper sanction where there is evidence of bad faith failure to preserve the evidence, but rather address ourselves to the situation where the law enforcement authorities have negligently failed to institute and enforce the proper preservation procedures.

[7]A bad faith failure to preserve the ampoules and their contents is susceptible of the inference that they were destroyed because the actual test results were different from those reported. As pointed out above, in the normal case, the ampoules, if available, would merely impeach the test results, but would rarely if ever conclusively establish innocence. However, bad faith destruction raises an inference that the ampoules could demonstrate innocence. In such an instance dismissal may well be the proper sanction.

In *In re Newbern* (1959) 175 Cal.App.2d 862 [1 Cal.Rptr. 80, 78 A.L.R.2d 901] the court held it a denial of due process to refuse a person arrested for drunkenness an opportunity to obtain a chemical test of his blood alcohol level at his own expense and discharged the petitioner. Now, under the implied consent statute (Veh. Code, § 13353 et seq.) the arrested person who chooses a chemical test of his breath to establish his innocence may be lulled into relying on this test and foregoing a private independent test of his own. If the law enforcement officials destroy the supporting evidence in bad faith, thereby raising the inference that the actual results would indicate innocence, it would appear that dismissal may be an appropriate sanction, as in *Newbern,* where the court said: "This [the test] was refused. We cannot but wonder why. If he was drunk as charged, the police would have had the evidence of the blood test to corroborate their opinion. Their refusal tends to cast some doubt upon their opinion. . . ." (*In re Newbern, supra,* 175 Cal.App.2d 862, 866.)

the breathalyzer test was administered, there must necessarily exist evidence from the arresting officer tending to show the fact of his intoxication. If the evidence of the breathalyzer test is excluded, there is no reason why the People may not, if they desire, go forward with whatever other proof may be available." Indeed the other proof may well be overwhelming. The material evidence provided by a preservation of the ampoules and their contents serves the function of possibly impeaching the test results. Therefore suppressing the test *results* should fully balance the improper failure to preserve the potentially impeaching evidence. It is noteworthy that where material evidence which would be of potential value in the impeachment of a prosecution witness has been improperly lost or destroyed by the government, federal decisions have indicated that the appropriate sanction to be imposed is the suppression of the witness' testimony. (*United States* v. *Bryant* (1971) 448 F.2d 1182 [145 App.D.C. 259]; *United States* v. *Augello* (2d Cir. 1971) 451 F.2d 1167; Comment, *supra*, 39 U.Chi.L.Rev. 542, 561.)

We must now turn our attention to the disposition of the case at hand. As intimated earlier, we have determined that the foregoing rule which we announce today shall have only prospective effect, that is that it shall apply only to breathalyzer tests administered after the date of this opinion. "The criteria guiding resolution of the question [of retroactivity] implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." (*Stovall* v. *Denno* (1967) 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967].) The purpose of imposing sanctions on the prosecution where material evidence favorable to the defendant has been nonmaliciously lost or destroyed is of course to afford to the defendant to the fullest extent a fair trial. On the other hand we cannot ignore realistic facts in respect to the administering of these chemical tests of breath, namely that it is the standard and almost uniform procedure for law enforcement officials throughout the state to destroy the ampoules[8] and their contents and that law enforcement generally has in good faith followed and relied upon this procedure. Finally, in view of the extraordinarily large number of arrests for drunk driving and the proportionately large number of instances where the arrestee has chosen the test of his breath, we are convinced that any retroactive application of the rule we announce herein would have a pervasive harmful and unwarranted effect on the administration of justice. We therefore hold that only prospective effect shall be given

---

[8]Title 17, California Administrative Code, sections 1219.2(d), 1219.2(a) required retention of blood and urine specimens "until the case has been adjudicated," while section 1219.3 imposed no such requirement with respect to the breath samples.

to our decision and that the rule announced today shall be applied only to chemical tests of breath administered after the date of filing of this opinion.[9]

█ In the case at bench, the destruction of the ampoules and their contents was accomplished by the investigative authorities in good faith and in conformity with standard law enforcement procedures. Such intentional but nonmalicious destruction or loss of evidence falls within the ambit of the rules governing the good faith loss of evidence which were applied in *United States* v. *Augenblick, supra,* 393 U.S. 348 and *Covington* v. *Municipal Court, supra,* 273 Cal.App.2d 470. (See fn. 5, *ante.*) In such circumstances, and since the rule which we announce today does not apply retrospectively to the instant case, the evidence as to the *results* of the breathalyzer test should not have been suppressed.

The order suppressing the results of the breathalyzer test and dismissing the action is reversed and the cause is remanded to the municipal court for trial.

Wright, C. J., McComb, J., Tobriner, J., Burke, J., and Molinari, J.,* concurred.

**MOSK, J.**—I dissent.
Once again the majority of the court produce a generally well-considered discussion on the substantive issue of law involved, and then founder on applying their rule to the party directly affected thereby, in this instance the defendant.

My learned colleagues persist in the notion that there are only two alternatives available in adapting a new court-made rule: application retroactively or prospectively. This is evident from the discussion at *ante,* pages 654-655. Yet I have pointed out time and again that there is a third, and preferable, alternative: applying the new rule to the aggrieved party responsible for bringing the issue to judicial attention, and thereafter prospectively. (See my concurring opinion in *In re Stewart* (1974) 10 Cal. 3d 902, 907 [112 Cal.Rptr. 520, 519 P.2d 568]; dissenting opinion in *In re Yurko* (1974) 10 Cal.3d 857, 867 [112 Cal.Rptr. 513, 519 P.2d 561]; concurring and dissenting opinion in *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 802 [87 Cal.Rptr. 839, 471 P.2d 487].)

[9]For similar conclusions on the prospective application of new rules in respect to comparable duties of the prosecution to preserve material evidence see *Eleazer* v. *Superior Court, supra,* 1 Cal.3d 847; *People* v. *Goliday, supra,* 8 Cal.3d 771, 780, footnote 7 and cases there cited.
*Assigned by the Chairman of the Judicial Council.

It is curious that the majority selectively quote the guiding criteria for applying new standards described in *Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967], and then proceed to ignore the resolution of the problem discussed in that very case, i.e., that the original litigant before the court must be given the benefit of a decision which creates new rights. *Stovall* declared that the rule established in *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], must apply to defendants Wade and Gilbert as "an unavoidable consequence of the necessity that constitutional adjudications not stand as mere dictum," and thereafter prospectively.

If the opinion of the majority in this case is not to be mere dictum, or an academic exercise with the characteristics of an advisory opinion (see *People* ex rel. *Lynch* v. *Superior Court* (1970) 1 Cal.3d 910, 912 [83 Cal. Rptr. 670, 464 P.2d 126]), the result must of necessity apply to the party directly involved, the defendant Hitch. Instead, the majority appear to deem him to be an unselfish public-spirited citizen, performing a pro bono service by helping to reform the law solely for utilization by future litigants. This is a noble role which I am certain the defendant would happily eschew in exchange for the right to taste the fruits of his elusive victory.

There is a second grave defect in the majority opinion. The defendant maintained that the intentional, though admittedly nonmalicious, destruction of the ampoule deprived him of due process of law by making valuable evidence unavailable. I concede arguendo that the issue does not rise to constitutional dimensions (*United States* v. *Augenblick* (1968) 393 U.S. 348 [21 L.Ed.2d 537, 89 S.Ct. 528]), but nevertheless whether the ampoule was a valuable exhibit necessary to the defendant's adequate defense is an evidentiary matter ordinarily reserved to the trial court's resolution.

Under comparable circumstances—there, a lost document—the Ninth Circuit found a dismissal by the trial court to be within its "inherent power." (*United States* v. *Heath* (9th Cir. 1958) 260 F.2d 623, 626.) Said the court: "any unfairness to a defendant should be eliminated by the trial judge. To prevent possible prejudice on trial beyond the general atmosphere of impartiality which traditionally pervades the courtroom, trial judges have wide discretion to methods of control." Here the trial judge, after a thorough hearing, concluded that the destroyed evidence was necessary to accord defendant a fair trial. I am reluctant to second-guess the trier of fact on what is essentially an elementary factual determination.

Indeed, throughout the majority opinion there is the implicit concession

that the physical evidence is necessary to a proper defense against the charges. That being so, I find it impossible to rationalize a result which in effect advises the defendant: you and the trial court are correct, the physical evidence is vital to your defense, without it you may not have a fair trial, but despite that handicap off to trial you must go. My colleagues, in reversing the trial court, direct the defendant to pole vault to acquittal— without a pole.

I would affirm the order.