STATE of Missouri, Respondent,

v.

Daniel Lee ESTES, Appellant.

No. 38376.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Jan. 17, 1978.

Motion for Rehearing and/or Transfer
Denied Feb. 14, 1978.

Hayes & Heisler, Robert E. Heisler, Clayton, Vogel & Frye, Tom K. O'Loughlin, II, Kenneth Gibbar, Cape Girardeau, for appellant.

John D. Ashcroft, Atty. Gen., Preston Dean, Philip M. Koppe, Asst. Attys. Gen., A. J. Seier, Pros. Atty., Cape Girardeau County, Cape Girardeau, for respondent.

NORWIN D. HOUSER, Special Judge.

Daniel Lee Estes, convicted of kidnapping Ronald Terry, § 559.240, RSMo 1969, has appealed.

The state's evidence showed these facts: At gunpoint defendant ordered Terry to get in defendant's station wagon. Terry demurred. Defendant threatened to shoot him. Because defendant was armed and because of the threat Terry got in the vehicle. Defendant drove out of town, onto a gravel road, to a deserted area, where he stopped the vehicle. Defendant pointed a gun at Terry, told the latter he was going to "end it" for Terry, opened the door and started to put some distance between the two. Terry pushed the gun aside, slid out of the seat on the same side with defendant, and tried to keep the gun "out of [his] direction." After leaving the vehicle the two scuffled. Defendant struck Terry with his fists, swung the gun at him but missed. While they were scuffling, the gun hit Terry in the back. While Terry had hold of defendant, and defendant had hold of the gun, the weapon discharged down the side of Terry's leg, but did not wound him. The scuffling ended when defendant heard the sound of a police siren on nearby Highway 72. Defendant then threw some handcuffs to Terry and required him to put them on. With Terry handcuffed, and defendant still holding the pistol, defendant told Terry to get in the car, which Terry did. Defendant then drove to a small town in the county, where, from a telephone booth outside Owl Shanty, calls to Terry's girl friend were made by defendant, and by Terry at defendant's direction. Defendant told the girl friend that he had Terry handcuffed; that he had a gun and that he, defendant, had tried to shoot Terry. Defendant required Terry to speak to the girl and confirm what he had told her. On information supplied by the girl friend officers of the law traced the call, arrived at the telephone stand, and arrested defendant.

I. Suppression of evidence?

A few days after defendant was jailed he indicated to Deputy Sheriff Cheek that "he wanted some powder residue tests taken of the gun," and asked if fingerprints had been taken from the gun. Fingerprints had not been taken. Deputy Sheriff Shannon testified that fingerprints were not taken because, for his own safety, the officer had seized the gun immediately at the scene, "thereby contaminating fingerprint evidence on the weapon." Furthermore, the officer did not consider scientific evidence—fingerprints—necessary because he felt he had adequate information at the time. He did not take gun residue tests because he did not feel that a gunshot residue test of a person who handled firearms would have been probative.

■ Appellant asserts on appeal that the state's failure to obtain and preserve a powder residue test on Ronald Terry and fingerprints from the gun, upon appellant's

request, was tantamount to a suppression of such evidence, and resulted in a denial of due process under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Appellant's defense was that Terry consented to the trip, and he claims that fingerprints on the gun and a powder residue test taken on Terry "would have been material evidence relating to the guilt or innocence of the appellant"; that this evidence "could have shown that the victim had handled the weapon"; that "[h]ad the victim's fingerprints been found in the gripping position or had significant powder residues been found on his hands indicating that he had discharged the gun, the defense of consent would have been aided considerably"; that appellant's "opportunity to defend was rendered impotent when the police refused to administer the tests which he requested"; that evidence never preserved "is but a variant of the failure to disclose cases deriving from *Brady v. Maryland*," and that "the intentional nonpreservation by investigators of discoverable evidence amounts to its illegal suppression," citing *United States v. Bryant*, 142 U.S.App.D.C. 132, 439 F.2d 642 (1971); *People v. Hitch*, 12 Cal.3d 641, 117 Cal.Rptr. 9, 527 P.2d 361 (Cal. banc 1974); *Torres v. State*, 519 P.2d 788, 795 (Alaska 1974), and *People v. Anderson*, 42 Mich.App. 10, 201 N.W.2d 299 (1972).

This point is disallowed, both on the facts and on the law.

As to fingerprints: There is no evidence that appellant requested that fingerprints be taken. He merely inquired if they had been taken. Furthermore, the evidence shows that any fingerprints on the gun were contaminated by the officer who seized the gun at the scene to insure his own personal safety. The test therefore, if taken, would have been useless in determining who held the gun.

As to the powder residue tests: Appellant made no request that such tests be taken of Terry. The only request appellant made was that the test be taken *of the gun*. It was not until the motion for new trial was filed that he complained of the failure of the officers to take such tests *of Ronald*

*Terry.* Another impediment is the fact that powder residue tests, to be of value or significance, must be taken within reasonable proximity in point of time after the discharge of the gun. The request in this case was made "a few days" (an indefinite, unspecified time) after the discharge of the gun. There is no evidence that a test taken at the time requested would have revealed anything of probative significance.

More important than these discrepancies is the speculative and conjectural nature of the suggestion. Appellant presented no evidence or intimation that the victim fired the gun. It was appellant's gun. The only testimony as to who fired the gun is Terry's testimony that appellant did so. There is nothing to suggest that in the scuffling Terry wrested the gun from appellant and fired it. There is testimony that in appellant's telephone conversation with Terry's girl friend appellant admitted he tried to shoot Terry. Appellant did not take the stand and testify that Terry fired the gun. The closest appellant comes to a direct contention that Terry fired the gun is the statement in his brief that a powder residue test *could have shown* that Terry "handled the weapon." There is no firm suggestion that the gun was not in appellant's possession at all times during this series of events. The idea that Terry fired the gun is theoretical, hypothetical, "iffy" and without support in the record.

Not only is appellant short on facts to support this proposition but also he is without support in law. While under *Brady v. Maryland* the intentional suppression by the prosecution of material evidence favorable to an accused, requested by accused, violates due process, and while under the *Bryant, Hitch, Torres* and *Anderson* cases, supra, intentional nonpreservation of discoverable evidence amounts to its illegal suppression, it is important to inquire into the nature of the evidence being discussed. These courts were dealing with evidence that is or at one time was existing, developed, matured, actual, and in most cases tangible, evidence. In *Brady* the evidence in question was an existing extrajudicial

statement; in *Bryant*, a tape recording; in *Hitch*, the results of a breathalyzer test and a test ampoule; in *Torres*, a girl's underpanties; in *Anderson*, photographs, all of which were in existence at one time or another. Therein lies the difference between those cases and this case. Here no powder residue test had been run. No fingerprints had been lifted. There was no developed, existing evidence. Appellant is contending that there was a duty on the state or its officers to run the powder residue test and lift and preserve the fingerprints (and, it would follow, a duty to make comparisons with appellant's and Terry's fingerprints and make available to appellant a report of such comparisons). In other words, appellant is taking the position that in order to accord due process the state is obligated, at the request of an accused, to conduct research and make, produce or perfect evidence which possibly might aid the accused in his defense. We are unable to accept this proposition. The state has no duty, on request of an accused, to assist him in the preparation of his defense. In *State v. Snipes*, 478 S.W.2d 299, 302 (Mo.1972), the Supreme Court quoted with approval the following statement: "Moreover, police officers are not required to take the initiative or even to assist in procuring any evidence on behalf of a defendant which is deemed necessary to his defense." In *State v. Holmes*, 389 S.W.2d 30 (Mo.1965), the court said, l. c. 34: "It was not incumbent upon the state to take defendant's fingerprints from the articles he touched or, if taken, to produce them in evidence. Nor is the state required to account for their absence." In *State v. Miller*, 560 S.W.2d 45 (Mo.App. 1977) opinion filed November 22, 1977, quoting from *State v. Wiggley*, 515 S.W.2d 791[2] (Mo.App.1974), we said, "It is not incumbent on the state to search for fingerprints * * *." If a powder residue test had been made; if fingerprints had been taken from the gun, and if the results of such a test and the fingerprints and comparisons had been in the possession of the officers, and had been relevant and otherwise admissible, and they had been suppressed by the state, we would have a different situation. In the case before us, however, there was no denial of due process.

## II. Prosecutor disqualified?

Defendant filed a motion to disqualify the prosecutor "because of his bias or prejudice." Defendant filed suggestions in support of the motion, alleging the following: Defendant was released on bail with directions not to make contact with Terry or Terry's girl friend. He was rearrested for violation of the "no contact" condition of bail. In open court the prosecutor indicated to the judge and to defense counsel that he believed defendant made phone calls to the girl friend and to Terry's residence concerning the pending case, in which he used the name of the prosecutor, thereby impersonating the latter. It was further alleged that the prosecutor expressed his resentment of what he believed to have been defendant's actions and impersonations of the prosecutor.

The suggestions were not verified, and the record does not show that testimony was taken on the motion to disqualify.

■ Error is assigned in overruling the motion. Appellant contends that his case was prejudiced because of the prosecutor's personal interest in the case; that he was thereby denied his constitutional right to a fair trial; that the motion to disqualify was denied "even though there was a clear indication that because of [the prosecutor's] belief that appellant had been impersonating him, he might be influenced thereby and might not be altogether fair to the appellant in the trial of the case." Appellant further argues that "actual prejudice was manifest in this trial."

The charge that the prosecutor expressed resentment about the alleged impersonation is unsubstantiated. Unsupported allegations in motions, suggestions or appellate briefs do not prove themselves. This charge is rejected for lack of proof.

The charge that actual prejudice was manifested at the trial likewise fails. The only support appellant offers for this

charge is as follows: (1) two statements in the prosecutor's opening statement to the jury, (2) questions asked the girl friend about harassing telephone calls by appellant and certain tape recordings, and (3) a question asked Terry on direct examination. None of the proposed examples of unfairness was considered significant by the trial court, except the prosecutor's reference in the opening statement to defendant having illegal plates on a vehicle. Objection to that statement was sustained. We concur in the court's ruling that the prosecutor erred in making that statement. This one minor error, however, is insufficient to attribute to the prosecutor unfairness or prejudice in the trial of appellant. The other examples were innocuous, nonprejudicial, and did not reflect on the prosecutor's fairness in presenting the case. As in *State v. Egan*, 272 S.W.2d 719, 726 (Mo.App.1954), "* * * careful review of the record in the instant case leaves us unconvinced that the prosecuting attorney evidenced more than a proper and commendable official interest in vigilant discharge of the duties entrusted to him." The cases cited by appellant in which a prosecuting attorney was held disqualified, *State v. Nicholson*, 7 S.W.2d 375 (Mo.App.1928), and *State v. Jones*, 306 Mo. 437, 268 S.W. 83 (1924), are so different on their facts that they are of no assistance in this case.

### III.  Error in Refusing Instructions?

Appellant claims the court erred in refusing to give instructions on common assault and assault without malice, and that he was thus prevented from presenting to the jury his defense of consent.

"An instruction on a lesser offense is not proper unless it is impossible to commit the greater without first committing the lesser, for otherwise the lesser is not properly a lesser offense to the greater. *United States v. Eisenberg*, 469 F.2d 156, 162[13] (8th Cir. 1972).

"The test to determine if one offense is 'necessarily' included in another has been described by our Supreme Court as follows: 'If the greater of two offenses includes all the legal and factual elements of the lesser, the greater includes the lesser; but if the lesser offense requires the inclusion of some necessary element not so included in the greater offense, the lesser is not generally included in the greater. *State v. Amsden*, 299 S.W.2d 498, 504[11, 12] (Mo.1957); * * *.'" *State v. Fleming*, 528 S.W.2d 513, 515[4] (Mo.App.1975).

Under this test neither common assault, nor assault with intent to do great bodily harm, without malice, is a lesser included offense within a charge of kidnapping. Paragraph 1 of § 559.240, defining the offense of kidnapping, provides, in part: "If any person shall, willfully and without lawful authority, forcibly seize, confine, inveigle, decoy or kidnap any person, * *." As pointed out by the Attorney General, the force referred to in the statute need not rise to the level of an assault. Appeals to fear, such as a threat to kill or do bodily harm, are sufficient to make a case under the statute, without the necessity of using actual physical force or violence. *State v. Knighton*, 518 S.W.2d 674, 678 (Mo.App. 1975); 51 C.J.S. Kidnapping § 1(4), p. 498; 1 Am.Jur.2d Abduction and Kidnapping § 13, pp. 168–169. Indeed, the crime of kidnapping under § 559.240 may be committed "without any violence to or degradation of the victim." *State v. Weir*, 506 S.W.2d 437, 440 (Mo.1974). The assaults shown in evidence were ancillary and incidental to the charge, *State v. Weir*, supra, 506 S.W.2d l. c. 440, and were not necessary to make the case.

Appellant does not explain why refusal of instructions on assault prevented him from presenting to the jury his defense of consent. As a matter of fact that defense was submitted by Instruction No. 6, which directed a verdict of not guilty of kidnap upon a finding and belief that Terry "was not secretly confined within this state against his will." Furthermore, the defense of consent was the principal theme of defendant's final argument to the jury, the

gist of which was that Terry was not confined against his will.

Judgment affirmed.

SIMEONE, C. J., and ALDEN A. STOCKARD, Special Judge, concur.