125 Cal.App.3d 584 (1981)
178 Cal. Rptr. 96
THE PEOPLE, Plaintiff and Respondent,
v.
JERRY AMEA BALLY, Defendant and Appellant.
Docket No. 21403.
Court of Appeals of California, First District, Division One.
November 12, 1981.
*585 COUNSEL
Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Richard S. Kessler, Deputy State Public Defender, for Defendant and Appellant.
George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Ronald E. Niver and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
ELKINGTON, Acting P.J.
Defendant Bally was charged with driving a motor vehicle "while under the combined influence of intoxicating liquor and a drug, to wit: Diazepam [Valium], and when so driving did *586 an act forbidden by law," i.e., crossed a double yellow center line, which act proximately caused bodily injury to three persons, thereby violating Vehicle Code section 23102.
(1a) His appeal is from an order granting probation and he makes but one contention of error, as follows: "The trial court committed reversible error by denying appellant's motion to suppress the results of his blood test based upon the loss of his blood sample."
The relevant evidence is uncontroverted.
A "lab technician" on behalf of the arresting police officers had drawn two vials of blood from Bally's body. A medical bioanalyst then tested one or both of the vials and found a blood alcohol level of .27 which indicated that Bally had imbibed the equivalent of at least 12 or 13 one-ounce shots of 86 proof whiskey. Presence of Diazepam was also found. Thereafter at Bally's request a blood sample of the vials was sent by its official custodian to a private laboratory chosen by Bally for an additional test. The sample was sent by regular first class mail, but it was never received at the laboratory. Bally has thus been denied an opportunity to have a technician of his choice analyze, report, and testify in relation to the alcohol and drug content of his blood, while driving his motor vehicle.
Bally's reliance is upon People v. Hitch (1974) 12 Cal.3d 641 [117 Cal. Rptr. 9, 527 P.2d 361].
People v. Hitch concerned the prosecution's nonpreservation of a test ampoule of a drunken driver suspect's breath, which will reasonably be equated with the blood samples of Bally in the case before us. (2) The court held that when a police agency has acquired "material evidence on the issue of the driver's guilt or innocence of the charge of driving a vehicle under the influence of intoxicating liquor," it is under "a duty to preserve and disclose such evidence." (12 Cal.3d, p. 652.) "[W]e hold," the court said, "that, where, as here, such evidence cannot be disclosed because of its intentional but nonmalicious destruction by the investigative officials, sanctions shall in the future be imposed for such nonpreservation and nondisclosure unless the prosecution can show that the governmental agencies involved have established, enforced and attempted in good faith to adhere to rigorous and systematic procedures designed to preserve the test ampoule and its contents and the reference ampoule used in such chemical test. The prosecution shall bear the burden *587 of demonstrating that such duty to preserve the ampoules and their contents has been fulfilled. If the prosecution meets its burden and makes the required showing, then the results of the breathalyzer test shall be admissible in evidence, even though the ampoules and their contents have been lost. If the prosecution fails to meet its burden then the court shall apply sanctions for nondisclosure. Finally we hold that in such latter event due process shall not require a dismissal of the action but shall require merely that the results of the breathalyzer test be excluded from evidence." (Id., pp. 652-653; fns. omitted.) And the court, adopting earlier language of United States v. Bryant (D.C. Cir.1971) 439 F.2d 642, 652, had stated: "`Negligent failure to comply with the required procedures will provide no excuse.'" (12 Cal.3d, p. 652.)
In the more recent case of People v. Nation (1980) 26 Cal.3d 169, 175 [161 Cal. Rptr. 299, 604 P.2d 1051], the high court, speaking of similar evidence, tersely restated the People v. Hitch rule as directing "that in the future law enforcement agencies take reasonable measures to ensure its adequate preservation." (Italics added.)
The record indicates to us that the police authorities in good faith and without negligence complied with People v. Hitch's "rigorous and systematic procedures" designed to adequately preserve Bally's blood sample during the time they exercised custody and control over it. To that extent the prosecution had met its burden, and we observe no contrary contention of Bally.
Instead, Bally's contention is narrowed to the argument that the police authorities' transmission of his blood sample by regular first class mail, in place of "registered return receipt mail," constituted "`[n]egligent failure to comply with the required procedures'" of People v. Hitch.
Registered mail, the evidence advises us, offers two safeguards. The first is indemnity for its loss, something of little benefit to one situated as was Bally and a consideration here, we think, irrelevant. The second is "a system of receipts to monitor the mail's ... delivery" to the addressee. This offers little assurance against loss; its purpose seems to be creation of evidence that the missive or article has been delivered to its addressee. Were we, or the trial court, to speculate, it may also be that registered mail, with its system of receipts from successive official custodians, would bring about some psychological effect tending toward *588 greater security against loss. But without evidence thereon, the trial court properly disregarded the point.
The superior court found reasonable compliance with People v. Hitch's demands, stating: "[W]e have the situation of the package being mailed and postage being applied. There is nothing to show any activities on the part of the sender that would in any way indicate wrongdoing. I can't believe that mailing something by first class mail is not appropriate means of sending documents and instruments through the mail, and from one person to another."
(1b) Our function is the determination whether the trial court's finding that the People had met their burden was supported by substantial evidence. (See People v. Lawler (1973) 9 Cal.3d 156, 160 [107 Cal. Rptr. 13, 507 P.2d 621]; Green Trees Enterprises, Inc. v. Palm Springs Alpine Estates, Inc. (1967) 66 Cal.2d 782, 784-785 [59 Cal. Rptr. 141, 427 P.2d 805].)
Here, a witness of the sending laboratory testified to a uniform custom and practice of sending such blood samples to other laboratories by first class mail without "return receipt requested," except "once or twice" when "requested by the people involved." (Bally had not made such a request.) A witness from the addressee laboratory testified to a police department practice of using regular first class mail only, while a blood specimen from another laboratory customarily "comes with a return receipt...."
And, of course, the important affairs of our nation, governmental, commercial, and social, are conducted mainly through the use of ordinary first class mail. It is the basis of a long-existent rule that "A letter correctly addressed and properly mailed is presumed to have been received in the ordinary course of mail." (Evid. Code, § 641; St. Vincent's Inst. etc. v. Davis (1900) 129 Cal. 20, 24 [61 P. 477].)
Bally's insistent argument that "use of a return receipt in the present case would have conclusively established that the [sending laboratory] had mailed appellant's blood sample," seems to us to miss the point. Here the trial court found that the blood sample had been mailed, and Bally does not contend otherwise.
We are unable to conclude that police authorities, under the circumstances here before us, were as a matter of law guilty of negligence in *589 the use of ordinary first class mail in transmitting Bally's blood sample. Under the requirement of People v. Hitch and People v. Nation the law enforcement agencies took "reasonable measures to insure its adequate preservation." There was thus substantial evidence supportive of the trial court's determination of the single issue now before us.
Nevertheless, we opine that police and prosecuting authorities would be well advised, in transmitting important evidence such as that with which we are here concerned, to use the method best calculated to assure against its loss. Under other evidence, or broader judicial experience, a determination contrary to that of the instant ruling might reasonably be affirmed by a reviewing court.
The order granting probation is affirmed.
Grodin, J., and Ragan, J.,[*] concurred.
Appellant's petition for a hearing by the Supreme Court was denied January 7, 1982.
NOTES
[*] Assigned by the Chairperson of the Judicial Council.