[No. A028698. First Dist., Div. Five. May 25, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
DEREK KIMBLE, Defendant and Appellant.

728

**Counsel**

David A. Nickerson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John W. Runde, Blair W. Hoffman and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

LOW, P. J.—Derek Kimble was convicted by a jury of attempted second degree murder (Pen. Code, §§ 664, 187) and robbery (Pen. Code, § 211), both acts committed with great bodily injury (Pen. Code, § 12022.7). We reverse the attempted murder conviction because the trial court improperly instructed the jury that it could find defendant guilty upon a theory other than express malice and we are unable to conclude that this error was harmless beyond a reasonable doubt. The robbery conviction is affirmed.[1]

On April 26, 1984, at about 11:15 p.m., the victim, Shawn Roberts, was approached and asked if he wanted to buy a "joint." Roberts asked what kind; the man replied, "Thai." Roberts identified the man as Black, about five feet, nine inches, wearing "dark clothes, possibly a tan jacket, maybe blue jeans." Roberts later identified him as the defendant. About 30 to 45 seconds later, another man arrived whom Roberts could not see clearly. Suddenly, Roberts was punched in the face, by whom he could not tell. The two men proceeded to beat Roberts. One of them said, "You'd better shut up or we're going to break your neck, and then you'll be dead." They took Roberts's wallet, his bank book, cigarettes, and his driver's license. Roberts testified that the two men asked for pot. When he replied that he did not have any, one said, "Okay. Let's throw him over." The two men lifted him over the rail and tossed him to the pavement, 23 feet below.

Roberts was conscious as he lay on the street, but his heel, right leg and vertebra were broken. When San Mateo Police Officer Carlos DeLa Fuente arrived, Roberts was unable to describe his attackers other than to say they were males. Officer DeLa Fuente found a watch with a broken crystal lying next to Roberts, which did not belong to the victim. Later that night, San Mateo Police Officer Dan Brooks observed defendant standing on B Street, about 25 to 35 yards from the scene of the assault. Defendant was drinking a beer, which is a violation of the city ordinance, and Officer Brooks approached him. Defendant was wearing a tan jacket and blue jeans. The officer learned defendant had an outstanding traffic warrant and arrested

[1] By order (S025403) filed April 21, 1988, the Supreme Court transferred this matter to the Court of Appeal and directed us to reconsider this case in light of the recent decision of People v. May (1988) 44 Cal.3d 309 [243 Cal.Rptr. 369, 748 P.2d 307].

him. When he mentioned the Roberts robbery, defendant bolted. The officer gave chase and ultimately caught him.

At the hospital, Roberts viewed over 40 mug shots and selected 5 as being similar to his assailants. Later, Officer DeLa Fuente showed Roberts a photographic lineup from which Roberts selected two pictures; one was defendant's. Three weeks after the assault Roberts viewed a physical lineup which included defendant. He selected someone other than defendant.

Roberts testified that the suspects took forty-one $1 bills. This sum represented tips Roberts collected at work earlier that day. Roberts stated that the bills were folded in his pocket and all were facing the same direction.

During the booking search at the station, Officer Lawrence Wright found thirty-eight $1 bills folded in defendant's front pocket, thirty-four of which were folded with Washington's picture facing the same direction. The remaining bills were folded randomly. Officer Wright gave the money to Officer Gwendolyn Raine, who testified that all 38 bills were facing the same way. Inexplicably, the money was not inventoried but was given back to defendant. Prior to being transported to the county jail, defendant left $15 in an envelope for his mother. When he was booked in county jail, defendant had only $9.05 on his person. There was no explanation where the rest of the money went.

Defendant's mother, Leola Graves, was called by the People and asked if she could identify the watch found next to Roberts as defendant's. She said she did not recognize it. She was impeached by Officer Robert Ross, who had interviewed Graves after defendant's arrest. He testified that she positively identified the watch as defendant's. This conversation was tape recorded.

Defendant did not testify. His motion to exclude incriminating statements made in violation of his *Miranda* (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) rights was denied. The only defense witness, an attorney, testified that he attended a physical lineup which included the defendant, and that defendant looked substantially different in the physical lineup than he did in the photographic lineup.

I

In support of his first contention, defendant argues that Proposition 8 did not affect California law which bars the use of statements taken in violation of *Miranda* v. *Arizona, supra,* 384 U.S. 436, for impeachment

purposes. Prior to trial, the parties stipulated the officers elicited four statements from defendant without first advising him of his constitutional rights. The record does not disclose the nature of these statements. After the trial court denied defendant's motion to exclude these statements for impeachment, he refused to testify.

Under federal law, statements by a defendant in violation of his constitutional rights may be used for impeachment purposes. (*Harris* v. *New York* (1971) 401 U.S. 222, 225-226 [28 L.Ed.2d 1, 4-5, 91 S.Ct. 643].) Under California law prior to Proposition 8, these statements were inadmissible for impeachment purposes. (*People* v. *Disbrow* (1976) 16 Cal.3d 101, 113 [127 Cal.Rptr. 360, 545 P.2d 272].) Relying on the truth-in-evidence provision of Proposition 8 (Cal. Const., art. I, § 28, subd. (d)), the People successfully argued at trial that federal law governs. Relying on *Ramona R.* v.`Superior Court* (1985) 37 Cal.3d 802 [210 Cal.Rptr. 204, 693 P.2d 789], defendant argues that section 28, subdivision (d) expressly preserves the state law barring the use of illegally obtained statements for impeachment. We disagree.

The truth-in-evidence provision of California Constitution, article I, section 28, subdivision (d) provides: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense . . . . *Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103.* Nothing in this section shall affect any existing statutory or constitutional right of the press." (Italics added.)

Recently, in *People* v. *May, supra,* 44 Cal.3d 309, our Supreme Court ruled that section 28, subdivision (d) (hereafter section 28(d)) abrogated judicial decisions, such as *Disbrow,* which required the exclusion of evidence solely on state constitutional grounds. (*Id.* at p. 318.) It held that statements obtained by police misconduct in violation of a defendant's constitutional rights may be excluded only when that result is compelled by the federal Constitution. (*Ibid.*) In so holding, the Supreme Court expressly rejected the notion that the *Disbrow* rule was a statutory rule of evidence relating to privilege or hearsay, and held the rule was not preserved by the savings clause contained in section 28(d). (*Id.* at pp. 318-320.) Following the federal rule of *Harris* v. *New York, supra,* 401 U.S. 222, the trial court was correct in ruling that defendant's extrajudicial statements could be used for impeachment purposes. The judgment cannot be reversed on this ground.

## II

■ Defendant argues that the trial court erred in instructing the jury that it may convict him of attempted second degree murder without finding he harbored a specific intent to kill. We agree.

The court properly instructed the jury on the elements of first and second degree murder. It also properly instructed the jury that an attempt requires both the specific intent to commit a crime and the direct but ineffectual act done towards its commission. The jury was also instructed that the crime of attempted murder requires that the defendant possess the mental state of malice aforethought. Then the court gave the contradictory instruction that malice may be express or implied. Regarding the offense of attempted second degree murder, the jury was instructed that it might find defendant guilty if it concluded that defendant manifested an intention unlawfully to kill a human being—i.e., express malice. The court improperly instructed the jury that it may return a guilty verdict if it found that defendant committed the act with implied malice. The court compounded the error by instructing: "When the killing [*sic*] is the direct result of such an act, it is not necessary to establish that the defendant intended the act would result in the death of a human being." This was error as the People concede. (*People* v. *Lee* (1987) 43 Cal.3d 666, 670 [238 Cal.Rptr. 406, 738 P.2d 752]; *People* v. *Guerra* (1985) 40 Cal.3d 377, 386-387 [220 Cal.Rptr. 374, 708 P.2d 1252].) As recently stated in *Lee,* "implied malice instructions should never be given in relation to an attempted murder charge. [Citations.]" (43 Cal.3d at p. 670.)

Having concluded this was error, we must decide whether it was harmless. ■ Prior to the *Lee* decision, the standard of prejudice was an open question. (See *People* v. *Guerra, supra,* 40 Cal.3d at pp. 386-387; *People* v. *Collie* (1981) 30 Cal.3d 43, 62 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776].) The *Lee* court concluded that where conflicting specific intent and implied malice instructions have been given, the *Chapman* (*Chapman* v. *California* (1967) 386 U.S. 18, 21 [17 L.Ed.2d 705, 708-709, 87 S.Ct. 824, 24 A.L.R.3d 1065]) beyond-a-reasonable-doubt test should be employed. (*People* v. *Lee, supra,* 43 Cal.3d at p. 676.) ■ In closing arguments, the attorneys limited themselves solely to a review of the identification evidence. They did not mention that the jury must find defendant harbored express malice in order to convict him of attempted second degree murder. In fact, the deputy district attorney further confused the proceedings by stating, "If you find . . . that there is insufficient evidence that it was wilful, deliberate and premeditated, well then you find him guilty of attempted murder in the second degree." The court's instructions to the jury did not overcome the confusion created by the implied malice instruc-

tion. This was deemed a crucial factor by the *Lee* court when it determined that the error was harmless. (*Id.* at pp. 677-678.) We cannot state that the error was harmless beyond a reasonable doubt. The judgment convicting defendant of attempted second degree murder is reversed.

## III

■ Defendant contends that the trial court erred in denying his *Hitch* motion. (*People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361].) The *Hitch* standard is no longer applicable as it has been effectively overruled by the combined effect of *California* v. *Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413, 104 S.Ct. 2528] and section 28(d). (See *People* v. *Tierce* (1985) 165 Cal.App.3d 256, 262-263 [211 Cal.Rptr. 325]; also *Preservation of Material Evidence in California: Does Hitch Survive Trombetta?* (1985) 13 Hastings Const.L.Q. 147, 165-169.)

■ The People have an obligation under the federal due process clause to retain evidence material to the defense. Under *Trombetta,* in order to meet the requirement of constitutional materiality the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." (*California* v. *Trombetta, supra,* 467 U.S. at pp. 488-489 [81 L.Ed.2d at p. 422].)

At defendant's booking at the city jail, two officers observed that defendant had thirty-eight $1 bills, thirty-four of which were folded in the peculiar manner testified to by the victim. The money was not preserved but was given to defendant. He left $15 for his mother and kept the rest. Upon booking at the county jail, he had less than $10 remaining. The trial court denied the *Hitch* motion on the ground that the money itself was not material, only the order of the bills. Also, the court concluded that the police cannot be blamed for evidence destroyed by the defendant.

■ Both the amount of the money, almost the same amount as was stolen from the victim, and the peculiar arrangement were material facts. We find no prejudice, for it is unlikely that this evidence had any exculpatory value. To the contrary, there is a high likelihood that this evidence would prove to be extremely damaging. Also, defendant had the opportunity to prove the money was not arranged in any peculiar pattern through cross-examination of the officers who observed the funds. (See *California* v. *Trombetta, supra,* 467 U.S. at pp. 489-490 [81 L.Ed.2d at pp. 422-423].) Importantly, this evidence was disclosed to him and thus he cannot now be heard to claim surprise or other disadvantage at trial. The trial court properly refused to impose sanctions on the prosecution.

## IV

 Defendant contends that his motion to dismiss the information (Pen. Code, § 995) should have been granted because the prosecution did not disclose a witness's interview conducted prior to trial. We disagree. The witness, Walter Washington, claimed to have been with defendant 30 minutes before the crime and saw defendant with a "big wad of money." The interview was conducted two weeks before the preliminary hearing and a copy of the transcript was given to defense counsel on the first day of trial. The report had not been previously turned over because of the witness's fear of retaliation. During the trial, Washington was questioned out of the hearing of the jury, and defense counsel indicated he did not need Washington's testimony.

The prosecution must disclose material evidence to the defense. (*In re Ferguson* (1971) 5 Cal.3d 525, 532 [96 Cal.Rptr. 594, 487 P.2d 1234].) The witness was known to defendant and, presumably, so was any exculpatory evidence. The government did not try to hide the witness or prevent defendant from taking his statement. Under these circumstances, there was no suppression of evidence. Even if we conclude that the prosecutor failed in his duty to disclose these statements prior to trial, that failure was unintentional and was done without malice. In such cases, the offended party is given an opportunity to meet the new evidence. (*People* v. *Reyes* (1974) 12 Cal.3d 486, 502 [116 Cal.Rptr. 217, 526 P.2d 225].) Here, the witness was brought into court for disobeying a subpoena. Apparently satisfied that the witness could not aid his case, defense counsel allowed the witness to leave. We find no prejudice to defendant.

The judgment convicting defendant of attempted second degree murder is reversed and is remanded for retrial or further proceedings. In all other respects, the judgment as to the robbery and great bodily injury enhancement is affirmed.

King, J., and Haning, J., concurred.