[Crim. No. 7699. Third Dist. Apr. 28, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL DEY CHAPMAN, Defendant and Appellant.

598

## COUNSEL

Judd Riley Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Marjory Winston Parker and Robert F. Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

JANES, J.—A jury convicted defendant of unlawful sexual intercourse (count one—Pen. Code, § 261.5[1]) and assault by means of force likely to produce great bodily injury (count two—§ 245, subd. (a)), as charged in the third amended information. The verdict on the first count included the jury's recommendation that punishment be by imprisonment in state prison (§ 264). The same jury subsequently found that defendant was sane at the time each offense was committed. Sentenced to state prison for each offense (the sentences to be served consecutively), defendant appeals from the judgment.

---

[1]All section references herein are to the Penal Code unless otherwise stated.

Defendant does not question the sufficiency of the evidence to support the verdicts; hence at this point it is sufficient merely to note that the record contains substantial evidence of forcible rape, aggravated assault, and an attempt to kill the 17-year-old victim by submersion in a bathtub of water. We will proceed directly to defendant's contentions on appeal, referring to specific factors of evidence where relevant in our discussion of his several contentions.

## STATUTE OF LIMITATIONS

The original information in this case was filed on May 5, 1971, and charged defendant under Penal Code section 261 with the rape of Rose G. (hereinafter, "Rose") by force and violence on or about April 21, 1971 (count one). The rape charge included an allegation of great bodily injury (§ 264) but did not allege that the victim was under the age of 18 years.

The original information also charged defendant with assaulting Rose with intent to commit murder on or about April 21, 1971 (count two— § 217).

On May 21, 1971; having found defendant to be "presently insane,". the trial court suspended the criminal proceeding and committed defendant to the custody of what was then the Department of Mental Hygiene (former §§ 1368-1370; Welf. & Inst. Code, § 4002). The following December, defendant was certified as being sane, and the court reactivated the criminal proceeding (former § 1372).

On January 7, 1972, pursuant to a plea bargain, a first amended information was filed which charged defendant with the single offense of assaulting Rose on or about April 21, 1971, by means of force likely to produce great bodily injury (§ 245, subd. (a)). Defendant pleaded guilty to that charge, and, on January 27, 1972, he was sentenced to state prison. However, on April 17, 1974, upon defendant's application for a writ of habeas corpus, the trial court set aside the 1972 conviction on the ground that defendant had been inadequately represented at the time of his plea because he had not been properly advised concerning the entry of a plea of not guilty by reason of insanity.

On May 1, 1974, without objection, a second amended information was filed which contained two counts: count one realleged the violation of section 261 of which defendant had been accused in the original information (rape of Rose by force and violence on or about April 21,

1971) with an allegation of great bodily injury (§ 264). Count two again charged defendant with a violation of section 245, subdivision (a) (assaulting Rose on or about April 21, 1971, by means of force likely to produce great bodily injury).

On June 10, 1974 (one day before trial), the prosecutor was allowed over defendant's objection to file a third amended information which retained count two as charged in the second amended information (violation of § 245, subd. (a)) but which alleged for the first time in the action—as a new count one—a violation of section 261.5 (unlawful sexual intercourse with Rose on or about April 21, 1971, the victim being therein described as a female under the age of 18 years). Defendant's objection to the latter amendment of count one was on the ground that a prosecution under section 261.5 was barred by the three-year statute of limitations set forth in section 800; and defendant persisted in this objection up to the time he was sentenced after verdict.

■ To both counts of the third amended information, defendant entered pleas of not guilty and not guilty by reason of insanity. Having been convicted of both offenses and thereafter found sane at the time of their commission, defendant reasserts on appeal his contention that the amendment of count one in the third amended information was barred by the statute of limitations. The contention is meritorious.

■ "A *necessarily* included offense exists when the charged offense as defined by statute, or as stated in the accusatory pleading, *cannot* be committed without also committing a lesser and included offense." (*People* v. *Escarcega* (1974) 43 Cal.App.3d 391, 396 [117 Cal.Rptr. 595].) (Italics in original.) ■ Since section 261.5 includes an element not present in section 261—namely, that the victim be "under the age of 18 years"—unlawful sexual intercourse under section 261.5 is not, as a matter of statutory definition, an offense necessarily included within the offense of rape proscribed by section 261.[2] (*People* v. *Puckett* (1975) 44

---

[2]Section 261 provides: "Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under either [*sic*] of the following circumstances:

"1. Where she is incapable, through lunacy or other unsoundness of mind, whether temporary or permanent, of giving legal consent;

"2. Where she resists, but her resistance is overcome by force or violence;

"3. Where she is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution, or by any intoxicating narcotic, or anaesthetic substance, administered by or with the privity of the accused;

"4. Where she is at the time unconscious of the nature of the act, and this is known to the accused;

"5. Where she submits under the belief that the person committing the act is her

Cal.App.3d 607, 610-611 [118 Cal.Rptr. 884].) Nor did the original information filed in this case on May 5, 1971, allege that the victim was younger than 18; hence, as a matter of pleading, a section 261.5 violation was not necessarily included within the section 261 charge originally made.[3] Accordingly, for purposes of the statute of limitations, the section 261.5 offense first alleged in the third amended information cannot be deemed to relate back to the date of the original information. (Compare, *People* v. *Daniels* (1969) 71 Cal.2d 1119, 1143 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677]; *In re McCartney* (1966) 64 Cal.2d 830 [51 Cal.Rptr. 894, 415 P.2d 782]; *In re Madrid* (1971) 19 Cal.App.3d 996, 1005-1006 [97 Cal.Rptr. 354].)

Since the new section 261.5 charge in the third amended information was filed more than three years after the alleged commission of that offense, the charge was barred by the statute of limitations. (See *People* v. *Asavis* (1938) 27 Cal.App.2d 685 [81 P.2d 595]; *In re Davis* (1936) 13 Cal.App.2d 109, 111 [56 P.2d 302]; cf., *Patterson* v. *Municipal Court* (1971) 17 Cal.App.3d 84, 88 [94 Cal.Rptr. 449].)

■ It was shown at the preliminary examination in 1971 that Rose was 17 years old at the time of the offenses alleged in the original information. The Attorney General therefore argues that the three-year limitations period of section 800 is not a factor in this case because section 1009 permits amendment of an information "at any stage of the proceedings as long as it does not 'charge an offense not shown by the evidence taken at the preliminary examination,' even though a different offense is charged" (*People* v. *Walker* (1959) 170 Cal.App.2d 159, 163 [338 P.2d 536]). The Attorney General's thesis is that an amendment alleging a new charge in an information can never be barred by the

husband, and this belief is induced by any artifice, pretense, or concealment practiced by the accused, with intent to induce such belief."

Section 261.5 provides: "Unlawful sexual intercourse is an act of sexual intercourse accomplished with a female not the wife of the perpetrator, where the female is under the age of 18 years."

[3] *People* v. *Collins* (1960) 54 Cal.2d 57 [4 Cal.Rptr. 158, 351 P.2d 326], which affirmed a conviction of statutory rape under an information charging forcible rape, is no longer controlling on the issue whether (as a matter of pleading) a charge of statutory rape is equivalent to a charge of forcible rape. *Collins* was decided under former section 261, which included both statutory rape *and* forcible rape among its subdivisions. As the court said in *Collins*, "The subdivisions of [former] section 261 do not state different offenses but merely define the different circumstances under which an act of intercourse constitutes the crime of rape." (54 Cal.2d at p. 59.) Statutory rape, now denominated "unlawful sexual intercourse," was deleted from section 261 in 1970 upon the enactment of section 261.5. (See *People* v. *Puckett, supra,* 44 Cal.App.3d at pp. 610-611; *People* v. *Escarcega, supra,* 43 Cal.App.3d at p. 396, fn. 1.)

statute of limitations as long as the amendment is properly made under section 1009.

The Attorney General's argument fails to recognize that the policies underlying section 800 and section 1009 are different. The provision of section 1009 that an information may be amended to charge an offense shown by the evidence taken at the preliminary examination is justified by the fact that such evidence may be contested at the preliminary by the accused and affords him notice of the charges he may face. (See *People* v. *Foster* (1926) 198 Cal. 112, 119-121 [243 P. 667]; *People* v. *Roth* (1934) 137 Cal.App. 592, 607-608 [31 P.2d 813].) The limitations provisions of section 800, however, are jurisdictional and reflect legislative determinations that there must come an end to the threat of prosecution for the offenses therein named, and that persons accused of such offenses should not be required to defend with or against evidence which may have faded by the passage of years. (*People* v. *McGee* (1934) 1 Cal.2d 611 [36 P.2d 378]; 22 C.J.S. (1961) Criminal Law, § 223, pp. 573-574.)

Logic indicates that the legislative policy underlying section 800 should be equally applicable where the offense was shown by the evidence at the preliminary examination. The Legislature's intention that such should be the rule is manifested by the fact that the Legislature has provided no exception to the applicability of section 800 in cases where the new charge is made in an amended information supported by evidence taken at a preliminary examination held either within or beyond the limitations period. "The legislature has prescribed the period of limitation for the prosecution of criminal cases. It has named the exceptions in which the case is taken out of the statute. [See § 802.] It is not for the courts to legislate or add to the statute." (*Ex parte Vice* (1907) 5 Cal.App. 153, 158 [89 P. 983].) Unlike section 800, which deals expressly with the limitations period for most criminal actions, section 1009 is a general statute covering amendments of accusatory pleadings and is silent concerning the time which may elapse between an offense and the filing of an amendment charging, for the first time, its commission. ■ It is an established principle of statutory construction that "a special statute dealing expressly with a particular subject [§ 800] controls and takes priority over a general statute [§ 1009]." (*Brill* v. *County of Los Angeles* (1940) 16 Cal.2d 726, 732 [108 P.2d 443].)

*People* v. *Crosby* (1962) 58 Cal.2d 713 [25 Cal.Rptr. 847, 375 P.2d 839], is not authority for a contrary conclusion. *Crosby* held, in effect, that the statute of limitations did not bar a proposed amendment of an indictment where the amendment would have merely inserted allega-

tions tolling the limitations period. In so holding, the Supreme Court repeatedly emphasized that the proposed amendment complied with the mandate of section 1009 that "[a]n indictment . . . cannot be amended so as to change the offense charged . . . ." (58 Cal.2d at pp. 721-724.)

Thus, unlike the amendment challenged in the instant case, the amendment in *Crosby* did not set forth a new charge. For that reason, the statute of limitations was inapplicable to the *Crosby* amendment, and the Supreme Court was not called upon to consider the different policies underlying section 800 and section 1009. *Crosby* cannot reasonably be construed as implying that the statute of limitations may be disregarded in *any* case where an amendment would be proper under section 1009—as where the evidence at the preliminary examination supports a proposed amendment of an information to change the offense charged.

### DESTRUCTION OF EVIDENCE

Defendant did not appeal from the judgment of conviction entered in January 1972 upon his plea of guilty pursuant to a plea bargain. The sheriff's department obtained confirmation of this fact from the district attorney's office in November 1972, and was assured then by the prosecutor's office that there was no further need to retain certain physical objects which sheriff's officers had taken as evidence from the victim's home—the scene of the alleged crimes—within a few hours after their occurrence. In December 1972, having received no reply to letters informing the victim and the owner of the home that they might reclaim such of the seized objects as belonged to them, the sheriff's department destroyed the objects by throwing them away. This was a customary practice of the department where the disposition of a case appeared to be final and where the district attorney's office had authorized disposal of the evidence.

Defendant's aforementioned petition for a writ of habeas corpus was filed in 1974, and, as previously stated, it resulted in an order of the trial court in April 1974 setting aside the 1972 conviction.

At the subsequent trial in June 1974, the court allowed the prosecutor to introduce photographs which had been taken of the destroyed objects immediately prior to their seizure in the victim's home. Defendant objected to the introduction of the photographs on the ground that the items shown therein had been destroyed by the sheriff's office; he also sought dismissal of the prosecution on the same ground. The court overruled his objections and denied the motion to dismiss.

■ Defendant contends that the court's rulings in this regard were erroneous. The contention is without merit. The destruction of the evidence, although deliberate, was not for the purpose of denying defendant access to it but was carried out as a normal procedure under circumstances where it reasonably appeared that the evidence would not be needed in court. (Cf., *People* v. *Kidd* (1961) 56 Cal.2d 759, 769-770 [16 Cal.Rptr. 793, 366 P.2d 49]; §§ 1417-1419 (destruction of exhibits upon order of trial court).) The sheriff's department could not be expected to retain the evidence indefinitely on the vague possibility that defendant's conviction—which had long since become final—might someday be set aside on collateral attack.

Defendant cites no authority where sanctions have been imposed upon the People for the destruction of material evidence by government agents after a conviction became final. *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361], upon which defendant relies, is not in point. Although *Hitch* held that sanctions may under some circumstances be imposed upon the prosecution for the intentional but nonmalicious destruction of material evidence by investigative officials, not only was the holding of that case expressly limited to prospective application (*id.* at pp. 652-655) but also—and, here, more significantly—the *Hitch* case did not involve a prosecution which had reached the stage of final conviction.

Defendant's contention that he was prejudiced by the nonavailability of the physical objects at his 1974 trial consists of a speculative argument that two of the items (a clump of hair found in the victim's bathroom, and a torn shirt which the victim testified that defendant was wearing) might have been shown to belong to an unidentified third party. Under the circumstances attending the destruction of evidence in this case, we reject the contention since there is no claim that the existence and possible exculpatory nature of the hair and shirt were unknown to or could not have been ascertained by defendant prior to his 1972 plea.

A state criminalist testified that in April 1971 he had examined some of the subsequently destroyed items. Defendant asserts that the photographs of those items should not have been received in evidence because, coupled with the testimony of the criminalist, the photographs "gave the jury the impression that these items had been analyzed and that nothing favorable to the accused has been found." However, defendant makes no argument or showing that, in cross-examining the criminalist, defense counsel was in any way prevented from ascertaining whether the criminalist had found anything exculpatory.

CROSS-EXAMINATION OF PROSECUTRIX

The prosecutrix, who was 17 at the time of the alleged offenses, testified that defendant used force and violence in the commission of the act of sexual intercourse. Accordingly, evidence of prior unchaste acts of the prosecutrix either with defendant or with other men was admissible.[4] (*People* v. *Pantages* (1931) 212 Cal. 237, 262-268, 277 [297 P. 890].)

Upon her cross-examination by defense counsel, the victim admitted that she had engaged in "prior sexual acts with several other men" besides defendant, that she had sexual relations with another man who had called for her several times at her home shortly before the date of the alleged offenses, and that she had voluntarily gotten into bed naked with defendant on a prior occasion intending to have intercourse with him, but did not engage in the act. Over the prosecutor's unsuccessful objection, defendant's attorney elicited testimony from another witness that the prosecutrix had an abortion long before the time of defendant's alleged act of unlawful intercourse.

Defendant contends, however, that the trial court improperly refused to let defense counsel ask the victim whether she had ever engaged in prostitution. Defendant cites no authority which would support such a question; our own research has found none; and we are of the opinion that the court did not abuse its discretion when it sustained the prosecutor's objection to the inquiry (Evid. Code, § 352).

Defendant also asserts that the court abused its discretion by not allowing the prosecutrix to be cross-examined concerning the "number" and "ages" of the men with whom she had previously engaged in unchaste conduct. However, there is no indication in the record that defense counsel ever proposed or attempted to ask the victim such questions, or that the court ever stated that such inquiry would be prohibited.

ALLEGED INCOMPETENCY OF COUNSEL IN INSANITY DEFENSE

■ Defendant contends that his attorney incompetently represented him in the sanity phase of the trial because his counsel (1) unsuccessfully attempted over defendant's objection to waive a jury and submit the

---

[4]This case was tried in 1974. Compare chapter 569 of the Statutes of 1974, adding section 782 to the Evidence Code and amending section 1103 of that code, effective January 1, 1975.

sanity issue to the court on the reports of the psychiatrists who examined defendant in 1971, (2) failed to urge that defendant be committed as a mentally disordered sex offender (Welf. & Inst. Code, § 6300 et seq.), (3) indicated in cross-examining a prosecution psychiatrist that he—defense counsel—had mispronounced "schizophrenic," (4) allegedly failed to take advantage of a purported offer by defendant's mother to have him examined by a private psychiatrist, (5) allegedly failed to point out that conflicting statements given by defendant to various physicians were given during his 1971 commitment to the Department of Mental Hygiene, and (6) having failed in his attempt to submit the sanity issue solely on the medical reports, "allowed" defendant to testify concerning that issue. The contention fails.

It was within defense counsel's discretion, as a tactical matter, to attempt to submit the insanity defense to the court on the basis of the 1971 medical reports (*People* v. *Floyd* (1970) 1 Cal.3d 694, 709 [83 Cal.Rptr. 608, 464. P.2d 64]; *People* v. *Reeves* (1966) 64 Cal.2d 766, 773 [51 Cal.Rptr. 691, 415 P.2d 35]); and, considering the devastating effect which the subsequent testimony of defendant and the prosecution psychiatrists had upon that defense, the defense attorney's attempt was well justified.

█ There being no showing in the trial court (or on this appeal) that defendant's case was an unusual one, he was ineligible for commitment as a mentally disordered sex offender because he was ineligible for probation, having been previously convicted in federal court of interstate transportation of stolen vehicles, a felony (18 U.S.C. § 2312; *People* v. *Fitzwater* (1935) 5 Cal.App.2d 187 [42 P.2d 1044]; see *People* v. *Lohr* (1938) 28 Cal.App.2d 397 [82 P.2d 615]), and it having been shown by the evidence on the guilt phase that he willfully inflicted great bodily injury upon Rose in his commission of an assault upon her by means of force likely to produce such injury (count two—§ 245, subd. (a)). (§ 1203, subds. (d)(2) and (e)(3); Welf. & Inst. Code, § 6301.)

The argument that defense counsel's mispronunciation of "schizophrenic" indicated his incompetency is speculative and falls far short of demonstrating that counsel's verbal error contributed to rendering the sanity phase a farce or a sham. (See *People* v. *Durham* (1969) 70 Cal.2d 171, 192 [74 Cal.Rptr. 262, 449 P.2d 198]; *People* v. *Reeves, supra,* 64 Cal.2d at p. 774.)

The assertion that defendant's attorney failed to utilize a private psychiatrist, whom defendant's mother allegedly was willing to provide,

is not supported by the record and is based solely upon a declaration under penalty of perjury which is attached to defendant's brief. The assertion, therefore, may not be considered by us. (*People* v. *Merriam* (1967) 66 Cal.2d 390, 396-397 [58 Cal.Rptr. 1, 426 P.2d 161]; *People* v. *Cheatham* (1968) 263 Cal.App.2d 458, 464 [69 Cal.Rptr. 679].)

■ The record refutes defendant's argument that his attorney failed to show that defendant's conflicting statements to physicians were made during his 1971 commitment to the Department of Mental Hygiene. Defense counsel brought out that fact during his cross-examination of a prosecution psychiatrist, Dr. Richmond. It was also shown on direct examination of the same doctor by the prosecutor. Nor is there merit in defendant's implied contention that his attorney incompetently failed to seek exclusion of the statements. Defendant's brief lends undue emphasis to the 1971 commitment under sections 1368-1370 by stating that the commitment occurred because he was "certified to be insane . . . ." He cites no authority which would support the proposition that his conflicting statements were rendered inadmissible by virtue of his commitment. As said in *Strutt* v. *Ontario Sav. & Loan Assn.* (1972) 28 Cal.App.3d 866, at page 878 [105 Cal.Rptr. 395], "The criterion under Penal Code, section 1368 is whether the defendant is able to understand the nature and purpose of the proceedings taken against him and to assist counsel in the conduct of his defense in a rational manner. . . . A commitment to a state hospital pursuant to Penal Code, section 1368 *is not the equivalent of an adjudication of either insanity or incompetency.*" (Italics added.) (See also *People* v. *Laudermilk* (1967) 67 Cal.2d 272, 282 [61 Cal.Rptr. 644, 431 P.2d 228].)

■ In regard to defense counsel's having "allowed" his client to testify on the sanity issue, defendant would apparently have it both ways on this appeal: he criticizes his trial counsel for having attempted to submit that issue on the medical reports; and, counsel having failed in that attempt, defendant also criticizes him for presenting the only favorable testimony which, so far as the record shows, was available to defendant on that subject—i.e., defendant's own testimony (later impeached) concerning his alleged insanity. Indeed, in resisting his attorney's effort to submit the sanity issue on the psychiatrists' reports, defendant told the court, "I think the attorney is wrong if he says I haven't got the evidence to prove my [in]sanity, and I'd like to testify about my past record on my mental health." There is no showing that defendant was unable to understand the nature and purpose of the sanity phase of the trial or to approach his insanity defense in a rational manner (§ 1368). Although defense counsel could not surrender to his

client the duty of making tactical choices, nothing indicates that he did so by placing defendant on the stand after counsel's effort to avoid any testimony on sanity had failed. The sanity phase was not thereby reduced to a farce or a sham. Indeed, as a tactical matter, defendant's attorney could reasonably have concluded that the best demonstration of defendant's claimed insanity would be defendant's testimony itself and his demeanor on the witness stand.

Moreover, as defendant concedes, the record shows that his attorney conducted a diligent cross-examination of the two prosecution psychiatrists who testified concerning the insanity defense.

### SENTENCING

Invoking the prohibition of section 654 against multiple punishment, defendant contends that the court erred in sentencing him on both the section 261.5 and the section 245 verdicts and in ordering the sentences to run consecutively. The issue is rendered moot by our conclusion that the section 261.5 charge was barred by the statute of limitations.

Defendant also makes a vague assertion that "some consideration should have been given to defendant's obvious deteriorated mental condition with a view to placing him in an environment where he might receive adequate treatment rather than sentencing him to State Prison for the maximum permissible period allowed by his conviction." We decline to consider such a casually made contention presented without argument or citation of authority.

### PRIOR CONVICTION

▇▇▇ On our own motion, we note an unauthorized entry of the aforesaid prior conviction in the abstract of judgment.

The third amended information, under which defendant was convicted, alleged that he had previously been convicted on April 10, 1970, of interstate transportation of stolen vehicles, a felony (18 U.S.C. § 2312).[5] Defendant admitted the prior conviction before the commencement of trial.

---

[5]All earlier versions of the information had also alleged the prior conviction; and defendant admitted the prior in connection with his plea of guilty to the first amended information in 1972.

However, no mention was made of the prior conviction by the trial judge when judgment was pronounced or in the judgment of conviction which was entered in the minutes. Inclusion of the prior conviction in the abstract of judgment was, therefore, beyond the court's jurisdiction. (*People* v. *Hartsell* (1973) 34 Cal.App.3d 8 [109 Cal.Rptr. 627].)

The judgment is reversed as to count one (Pen. Code, § 261.5—unlawful sexual intercourse) and affirmed as to count two (Pen. Code, § 245, subd. (a)—assault by means of force likely to produce great bodily injury). The superior court is directed to dismiss count one, to prepare an amended abstract of judgment limited to defendant's conviction under count two and omitting reference to defendant's prior conviction in 1970, and to send an amended commitment in conformity therewith to the Department of Corrections.

Puglia, P. J., and Friedman, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 26, 1975.