Filed 9/13/24  P. v. Rios CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C097867 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE013135) |
| v. | |
| AARON DANIEL RIOS, | |
| Defendant and Appellant. | |

After a jury trial, defendant Aaron Daniel Rios was convicted of genital penetration of a minor by force, violence, or duress; sexual battery; and six counts of committing lewd acts upon a minor. Rios was sentenced to 16 years eight months in prison. He now claims that the trial court erred by incorrectly instructing the jury on a specific intent crime and by failing to instruct the jury on a lesser included offense. He further argues that his counsel provided ineffective assistance during the sentencing hearing, and the trial court erred in concluding that the lack of prior sexual complaints against him was a mitigating circumstance. We affirm.

1

## BACKGROUND

Rios was a 38-year-old high school cross-country and track and field coach. He also trained young runners through his own private running club.

Doe joined his running club when she was in eighth grade. Although she also joined Rios's school running team when she entered high school, the school's running team was shut down that year due to the COVID-19 pandemic. Doe and other runners continued to run with Rios's private club, which maintained operations.

As training progressed, Doe was often faster than her teammates, and she usually found herself ahead of the group with Rios. Rios also hired her to help coach his younger athletes. Over time, Rios increased the amount of time spent with, and attention he gave to, Doe. Between the ages of 14 and 15, when Doe was a freshman in high school, Rios began to physically touch Doe as they ran; placing his hand on Doe's hip and gently moving her to the side as they ran together on the trail. Although the touching seemed unusual to Doe, she generally enjoyed her time with Rios and viewed him like a father figure.

During a car ride after practice, Rios told Doe that he had an "issue," but he did not elaborate. Later that day, Rios texted Doe that his "issue" was her. He then sent her a song titled, "Lonely for You" and told her that it represented how he felt about her. Rios's overtures scared Doe, to the point that she vomited.

The next day at practice, Rios told Doe that he loved her, that he screams her name in his sleep, and that he planned to divorce his wife. Rios asked her if he should quit his coaching job. Doe was mostly quiet, but she told him not to quit. Rios then asked Doe if she felt the same way. Even though she did not want "to be with him," she nodded and gave him a vague response. Rios instructed Doe not to tell anybody about his feelings toward her. Doe considered telling someone, but she was scared nobody would believe her since he was a well-respected coach and she worried about how it would affect her running if she upset him.

2

At Rios's instruction, Doe downloaded an application called "Signal." Doe understood the application as allowing for a more secure text messaging; the messages self-deleted after a specified period. After Doe downloaded the application, Rios began sending her private messages telling her things like, "I love you," "I miss you," and "I need to be with you." Doe returned the messages, telling him that she loved and missed him. She hoped that he would leave her alone if she "gave him somewhat of what he wanted."

Rios would also call Doe on the phone, and some of those calls became sexual. He would tell her that he wanted her to sit on his face or that he wanted to have sex with her. He would also tell her to touch herself and have an orgasm.

Rios and Doe continued to train together. During a car ride to practice, Rios reached over to the passenger seat and held Doe's hand. They stopped at a red light, and Rios leaned over, pulled Doe close, and kissed her twice on the mouth. Doe froze before leaning away from Rios. He told her that the kiss was their secret. He later sent her a text message thanking her for letting him kiss her.

A few days later, Rios and Doe ran together on the river levee. During the run, Rios led Doe from the levee down a path to a secluded area surrounded by trees. Rios approached Doe from behind, wrapped his arms around her, and gave her a firm bear hug. He slid his hand inside her spandex shorts and underneath her underwear. With his finger, he pushed apart the lips of her vagina and pushed upwards. Doe tried to get his arms off of her and told him it was not a good idea. He touched her clitoris. Rios then moved his hand out of her shorts, then back inside them to touch her butt. Scared, Doe fidgeted and tried to get out of his hold. With his hand down Doe's pants, Rios pressed his erect penis against her butt. He then kissed her neck and mouth. He tried to put his tongue in her mouth, but she closed her mouth.

3

Afterwards, Doe continued to run and communicate with Rios, but she began to withdraw from him. He asked her what was wrong and instructed her not to tell anybody what he had done to her. He told her no one would believe her if she said anything.

About a month later, Doe attended Rios's running camp in Lake Tahoe. Rios's interactions with Doe both prior to and during the camp concerned some of the parents in attendance. Prior to the camp, parents observed Rios and Doe flirting with a level of "intimacy of friendliness and familiarity that was quite shocking in public." During camp, Rios and Doe sat together at a picnic table talking in the dark. When a parent brought over an illuminated lantern and placed it on the table, either Rios or Doe extinguished or dimmed the light. Rios and Doe also engaged in intense, private conversations that appeared to involve Rios scolding and Doe being upset and worried. An assistant coach, who was also the mother of another girl on the running team, shared these concerns with Rios. Defensive and angry, he told her that he wanted the parents to stay out of his business.

After the camp, the assistant coach shared her concerns with the high school's athletic director. School administrators held a meeting with Doe and her father. They specifically asked whether Rios had ever touched Doe inappropriately. She lied and said no. Two days later, however, Doe disclosed Rios's abuse to her father, who then contacted law enforcement. Doe testified that she decided to come forward because she was concerned about what could happen to other athletes if she did not disclose what happened to her.

Doe participated in a pretext call to Rios and the jury heard a recording of that call.[1]

---

[1] The recording was not lodged as an exhibit as part of the record on appeal and the transcript of the call was not admitted into evidence.

Rios testified in his own defense. He spent a lot of time running with Doe, and their relationship turned flirtatious. They exchanged flirtatious text messages, such as "I love you," and "I miss you." Rios described the relationship as one of a boyfriend/girlfriend. Rios admitted kissing Doe on the lips at a stoplight while giving her a ride to practice.

Rios also acknowledged an intimate incident that occurred a few days later. He testified that they hugged and, at her request, he touched her butt. Rios described the touching as flirtatious and playful, but not sexual. He knew he had crossed the line, and he felt terrible about it. Rios denied leading Doe into the trees, forcibly kissing her, or ever purposefully touching her vagina. He also claimed that he only touched Doe with the intent to innocently flirt, never for sexual gratification.

The jury found Rios guilty of genital penetration of a minor accomplished by force, violence, or duress (count one; Pen. Code, § 289, subd. (a)(1)(C)),[2] six counts of committing a lewd act upon a minor (counts two, four through eight; § 288, subd. (c)(1)), and sexual battery (count three; § 243.4, subd. (a)). We note that, as charged, count two and counts four through eight each alleged that Rios touched a different part of Doe's body for the intent of satisfying his sexual desires. The jury also found true two aggravating factors: that the child victim was particularly vulnerable and Rios took advantage of a position of trust (Cal. Rules of Court, rule 4.421(a)(3), (11)).

The trial court sentenced Rios to 16 years eight months in prison, which consisted of: an upper term of four years on count three as the base term; a fully consecutive upper term of 10 years on count one under section 667.6, subdivision (c); consecutive terms of eight months on each of counts five, six, seven and eight; and eight months on counts two and four, which were stayed pursuant to section 654.

---

[2]     Undesignated statutory references are to the Penal Code.

Rios filed a timely notice of appeal.

## DISCUSSION

### I

*Jury Instructions on General Intent*

Rios argues that the trial court erred when it instructed the jury that lewd and lascivious conduct (§ 288, subd. (c)(1)) was both a general and specific intent crime, thus confusing the jury and violating his right to due process. The People disagree with Rios's interpretation of the instructions, arguing that the court correctly instructed that simple battery, as a lesser included offense of lewd and lascivious conduct, was a general intent crime. We agree with the People.

A. Additional Background

The People charged Rios with, inter alia, six counts of committing a lewd act upon a minor (counts two, four through eight; § 288, subd. (c)(1)). Through use of CALCRIM No. 252, the trial court informed the jury of the following:

"The crimes charged in this case require proof of the union, or joint operation, of act and wrongful intent.

"The following crimes require general intent: simple battery, a lesser crime of sexual penetration by force upon a minor age 14 years or older as charged in Count One. Sexual battery as charged in Count Three. And lewd and lascivious acts with a child, age 15 years, as charged in Counts Two, Four, Five, Six, Seven, and Eight.

"For you to find a person guilty of those crimes, that person must not only do the prohibited act, but most do so with wrongful intent. A person acts with wrongful intent when he or she intentionally does a prohibited act; however, it is not required that he or she intend to break the law. The act required is explained in the instruction for each crime.

"The following crimes require a specific intent or mental state . . . lewd and lascivious acts with a child, age 15 years, as charged in Counts Two, Four through Eight,

6

and the lesser crime of attempted lewd and lascivious acts, as charged in Count Six, and the allegation that the defendant took advantage of a position of trust or confidence to commit the charged crimes, that person must not only intentionally commit the prohibited act but must do so with a specific intent. For you to find a person guilty of those crimes, that person must not only intentionally commit the prohibited act but must also do so with a specific intent. The act and the specific intent required are explained in the instruction for each crime."

The court later instructed the jury with CALCRIM No. 1112 on the elements of the lewd and lascivious conduct, including the required specific intent: "The defendant is charged in Counts Two, Four, Five, Six, Seven and Eight with a lewd and lascivious act on a 14 or 15 year old child who is at least 10 years younger than the defendant in violation of Penal Code section 288(c)(1).

"To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant willfully touched any part of a child's body, either on the bare skin or through the clothing; [¶] 2. The defendant committed the act with the intent of arousing, appealing to or gratifying the lust, passions or sexual desires of himself or the child; [¶] 3. The child was 15 years old at the time of the act; [¶] AND [¶] 4. When the defendant acted, the child was at least 10 years younger than the defendant. [¶] The touching need not be done in a lewd or sexual manner. [¶] Someone commits an act *willfully* when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else or gain any advantage. [¶] Actually arousing, appealing to, or gratifying the lust, passions or sexual desires of the perpetrator or child is not required for lewd or lascivious conduct. [¶] It is not a defense that the child may have consented to the act. . . ."

For each charge Rios faced, including those of lewd and lascivious conduct, the jury was provided with a verdict form allowing them to decide whether, if Rios was not guilty of the charged offense, he was guilty of battery as a lesser included offense.

7

During closing argument, the parties argued the requisite specific intent for lewd and lascivious conduct as well as the issue of battery as a lesser included offense to each of the charged offenses.

## B. Forfeiture

The People argue that Rios forfeited his challenge to the jury instruction by failing to object in the trial court. Generally, a party forfeits any challenge to a jury instruction that was correct in law and responsive to the evidence if the party fails to object in the trial court. (*People v. Hudson* (2006) 38 Cal.4th 1002, 1011-1012; *People v. Ramos* (2008) 163 Cal.App.4th 1082, 1087.) The rule of forfeiture does not apply, however, if the instruction was an incorrect statement of the law (*Hudson*, at p. 1012), or if the instructional error affected the defendant's substantial rights (§ 1259; *Ramos*, at p. 1087). Because Rios contends the instructions did not correctly convey the element of intent for the offense of lewd and lascivious conduct and, if such an error exists, it would affect his substantial rights, we will review the issue despite his failure to object below. (See *People v. Valenti* (2016) 243 Cal.App.4th 1140, 1164, superseded by statute on other grounds as stated in *People v. Brooks* (2018) 23 Cal.App.5th 932, 946.)

## C. Standard of Review

We review de novo whether a jury instruction correctly states the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218; *People v. Ramos, supra*, 163 Cal.App.4th at p. 1088.) When addressing a claim of jury misinstruction, we must assess the instructions as a whole, viewing the challenged instruction in context with other instructions, in order to determine if there was a reasonable likelihood the jury applied the challenged instruction in an impermissible manner. (*People v. Wilson* (2008) 44 Cal.4th 758, 803.) We presume "that jurors understand and follow the court's instructions." (*People v. Gray* (2005) 37 Cal.4th 168, 231.)

D. Analysis

Lewd or lascivious conduct in violation of section 288, requires " 'the *specific intent* of arousing, appealing to, or gratifying the lust of the child or the accused.' " (*People v. Warner* (2006) 39 Cal.4th 548, 557.) Rios argues CALCRIM No. 252, as given in this case, erroneously instructed the jury that the section 288 offenses required both general and specific intent. We don't view the instruction the same way that Rios does. As given in this case, CALCRIM No. 252 informed the jury that the offense of simple battery, as a lesser included offense of *all* the charged offenses, was a general intent crime: "*The following crimes require general criminal intent: simple battery, a lesser crime of sexual penetration by force upon a minor, age 14 years or older, as charged in Count One, sexual battery, as charged in Count Three, and lewd and lascivious acts with a child, age 15 years, as charged in Counts Two, Four, Five, Six , Seven, and Eight.*" (Italics added.) The instruction also informed the jury that proof of a specific intent was required for among others, the crime of "*lewd and lascivious acts with a child, age 15 years, as charged in Counts Two,* [*and*] *Four through Eight.*" (Italics added.) Viewing the instructions as a whole, the jury would have understood the instruction required specific intent for the lewd and lascivious act counts, and general intent for the lesser crime of simple battery, not only because that is how the instruction read, but also because the instruction also informed the jury that the act and intent required would be explained in the instruction for each crime, and in fact the jury was instructed on the specific intent required for lewd and lascivious conduct in CALCRIM No. 1112. Additionally, the parties argued the requisite specific intent for this offense during closing arguments, including thoroughly arguing the issue of simple battery as a lesser included offense to each of the charged offenses. Lastly, the jury was provided verdict forms on all of the counts, which included the option to find Rios guilty of simple battery as a lesser included offense. We conclude there was not a reasonable likelihood

9

the jury applied the challenged instruction in an impermissible manner. (*People v. Wilson, supra*, 44 Cal.4th at p. 803.)

## II

### *Lesser Offense Instruction*

Rios argues that the court erred in failing to sua sponte instruct the jury on sexual penetration by someone older than 21 years of age to a victim under 16 years old (§ 289, subd. (i)) as a lesser included offense of forcible sexual penetration (§ 289, subd. (a)(1)(C)) as alleged in count one. We disagree.

The Legislature has provided that a "jury . . . may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense." (§ 1159.) This language explicitly allows prosecutors to try the accused of both charged offenses and attempts to commit those offenses. (*People v. Fontenot* (2019) 8 Cal.5th 57, 62-63.) Additionally, a trial court is required to instruct a jury on a necessarily included offense if there is substantial evidence that the defendant is guilty only of the lesser and not the greater offense. (*People v. Birks* (1998) 19 Cal.4th 108, 118.) However, a defendant is not *entitled* to instruction on lesser offenses "which are *not* necessarily included in the charged offense." (*Id*. at p. 119.) "Rather, a jury need only be instructed on offenses that the prosecution actually charged either explicitly or implicitly (because they were necessarily included within explicitly charged offenses)." (*People v. Hicks* (2017) 4 Cal.5th 203, 211.)

We determine de novo whether one crime is a lesser included offense of another. (*People v. Licas* (2007) 41 Cal.4th 362, 366.)

To determine whether one offense is a lesser included offense of another, courts apply either the elements test or the accusatory pleading test. (*People v. Fontenot, supra*, 8 Cal.5th at p. 65.) Here, the charge alleged Rios "unlawfully cause[d] the penetration of the genital opening" of Doe, aged 15, for the purpose of sexual gratification and accomplished by force. This " 'incorporate[d] the statutory definition of the charged

10

offense without referring to the particular facts" in much detail, so we " 'must rely on the statutory elements.' " (*Ibid*., citing *People v. Robinson* (2016) 63 Cal.4th 200, 207.) "The elements test is satisfied if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, such that all legal elements of the lesser offense are also elements of the greater. (*People v. Smith* (1998) 64 Cal.App.4th 1458, 1471.) In other words, ' "[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former." ' (*People v. Reed* [(2006)] 38 Cal.4th [1224,] 1227; see *People v. Pearson* (1986) 42 Cal.3d 351, 355.)" (*People v. Bailey* (2012) 54 Cal.4th 740, 748.)

Under the above-described framework and elements test, we conclude the nonforcible sexual penetration (§ 289, subd. (i)) is not a lesser included offense of forcible sexual penetration of a minor at least 14 years old (§ 289, subd. (a)(1)(C)). Section 289, subdivision (a)(1)(C) prohibits an act of sexual penetration upon a minor who is 14 years of age or older, by any person, when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person. (§ 289, subd. (a)(1)(C).) In contrast, section 289, subdivision (i) prohibits nonforcible sexual penetration by someone aged 21 years or older to someone under age 16. (§ 289, subd. (i).) The nonforcible sex crime requires the perpetrator and victim to be within certain age limits while the forcible sex crimes do not have the same requirements. Specifically, a perpetrator under the age of 21 may commit forcible sexual penetration against a victim who is 17 years old, thus satisfying the prohibitions under section 289, subdivision (a)(1)(C). Because, under those same circumstances, neither the perpetrator nor the victim would meet the statutory requirements under section 288 subdivision (i), the nonforcible offense is not a necessarily lesser included offense of forcible sexual penetration of a minor over 14 years old. (Cf. *People v. Chapman* (1975) 47 Cal.App.3d 597, 603 ["Since section 261.5 includes an element not present in section 261 — namely, that the victim be 'under the

11

age of 18 years' — unlawful sexual intercourse under section 261.5 is not, as a matter of statutory definition, an offense necessarily included within the offense of rape proscribed by section 261"].)

Rios argues that factually, he satisfies the conditions for violating section 289, subdivision (i) because he was over 21 years of age and Doe was under 16 years of age and that substantial evidence supports a conviction on the lesser included offense. Yet Rios cites no authority for the proposition that we may consider the factual evidence in isolation when deciding whether an offense is necessarily included in the charged offense. This approach puts the cart before the horse. (See *People v. Marshall* (1957) 48 Cal.2d 394, 405 ["Some cases suggest mistaken views that an offense may be 'necessarily included' in another offense" because "the evidence proves a 'lesser' offense"].) Rather, case law instructs that there are two components of a court's sua sponte obligation to instruct on a lesser included offense: the lesser offense must be necessarily included in the charged offense *and* must be supported by substantial evidence. If either component is not met, the court had no sua sponte obligation to instruct on the offense. (See, e.g., *People v. Shockley* (2013) 58 Cal.4th 400, 406 [no sua sponte obligation to instruct when, under the elements test, a lesser offense is not necessarily included in the charged offense]; *People v. Huggins* (2006) 38 Cal.4th 175, 217 [no sua sponte obligation to instruct when there was not substantial evidence justifying an instruction on the lesser included offense].)

To the extent Rios is arguing that a lesser included instruction was required under the accusatory pleading test, we disagree. Under that test, a lesser offense is included within the greater offense " ' "if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." ' " (*People v. Lopez* (1998) 19 Cal.4th 282, 288-289.) Here, because the conduct described in the accusatory pleading does not include the allegation that Rios is over 21 years of age, we cannot say that the charge, as

pleaded, necessarily provides notice of a charge pursuant to section 289, subdivision (i). (See *Lopez*, at pp. 293-294.)

Accordingly, we conclude the trial court had no sua sponte obligation to instruct the jury on nonforcible sexual penetration under section 289, subdivision (i) in this case. In light of this conclusion, we need not address whether there was substantial evidence to support such an instruction or whether the failure to provide the instruction was prejudicial error.

III

*Ineffective Assistance of Counsel*

Rios argues his counsel provided ineffective assistance by advocating for the imposition of a term of probation when Rios was statutorily ineligible for such leniency. We disagree.

A. Additional Background

The jury found true aggravating factors that the victim was particularly vulnerable, and Rios took advantage of a position of trust. The probation report noted those factors, along with the mitigating circumstances that Rios had no prior criminal record and had led a productive life before committing his first criminal offense. The report stated that Rios was ineligible for probation under section 1203.065, subdivision (a), and recommended an upper term sentence.

The People filed a sentencing brief echoing probation's recommendation of an upper term sentence based on the aggravating factors.

Defense counsel filed a lengthy sentencing brief summarizing Rios's productive life as a coach and father, the limited incidents of physicality with Doe, the consensual nature of their relationship, the numerous letters from the community on his behalf, his lack of prior criminal history, and the detriment to his family, concluding these factors all warranted a lesser term. Counsel argued probation was justified for three reasons: the plethora of mitigating circumstances; the unusual circumstances present; and racial bias

13

by the prosecution of this case. Alternatively, counsel requested the low term. Counsel also argued that the maximum sentence should not exceed the eight-year term the People offered Rios in an earlier plea deal.

At the sentencing hearing, defense counsel reiterated that Rios had no prior criminal record and was a productive and active member of his community. Counsel highlighted the numerous letters written by community members on Rios's behalf. He argued against labeling Rios as a "predator" and maintained that, under the facts of the case, Rios did not "groom" Doe into a sexually submissive victim. He recited the circumstances of the case favorable to Rios. Counsel also represented to the court that, in order to avoid a disparity in sentencing under the California Racial Justice Act of 2020, Rios should receive probation. Counsel explained that, in 2017, a White male athletic coach at the same high school "actually had sex" with a 16-year-old student but only received a four-year sentence upon pleading guilty. Counsel noted that the district attorney's office is the same and, although Rios went to trial, he did so after receiving an offer of eight years, which should have been lower given the plea in the 2017 case and Rios's actual conduct. Counsel argued, "the difference is [Rios is] Hispanic. The other guy is white. It brings in the new law about racial justice and Racial Justice Act."[3]

---

[3] This argument references material provided to the court during a pretrial motion to recuse the Office of the District Attorney of Sacramento County. In that prior motion, counsel argued that several specific assistant district attorneys had close ties with the high school in question and that office was also responsible for the prosecution of a different athletic coach at that school who had sex with at least one student. Challenging a disparate sentence under the Racial Justice Act is allowed under section 745, subdivision (a)(3)-(4). If a violation of the statute has been established, the trial court is required to "impose a remedy specific to the violation" from the list of remedies provided. (§ 745, subd. (e).) Rios forfeits any argument as to the merit of or ruling on this argument as he fails to raise or discuss it on appeal. (Cal. Rules of Court, rule 8.204; *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 ["Issues do not have a life of their own: If they are not raised or supported by argument or citation to authority, [they are] waived"].)

The trial court stated it considered the probation report, the sentencing briefs, oral arguments, all 48 letters submitted on Rios's behalf, and the victim statements. As factors in mitigation, the court recognized Rios's lack of criminal record, productive life as a coach and devoted father, and engagement in the community. The court also considered his age, education, health, lack of history of alcohol or substance abuse, family background, and employment. The court acknowledged the devastating impact that Rios's sentence would have on his family, Rios's expression of remorse, and his support network. The court individually addressed each of the numerous mitigating circumstances raised by defense counsel. The court also thoroughly addressed the aggravating factors that Rios abused a position of trust in sexually assaulting a vulnerable 15-year-old girl under his tutelage. The court found Rios statutorily ineligible for probation before balancing the aggravating and mitigating factors to justify an upper term sentence on count three.

## B. Analysis

To establish a claim of ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." (*Id*. at p. 697.) Indeed, it is often easier to dispose of such a claim based on lack of sufficient prejudice alone. (*Ibid*.) To prevail on an ineffective assistance of counsel claim, "the petitioner must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel. [Citation.]" (*People v. Williams* (1988) 44 Cal.3d 883, 937.)

15

Rios claims that the fact that trial counsel advocated for probation when Rios was statutorily ineligible demonstrates trial counsel failed to: perform basic research on probation eligibility; understand the available sentencing alternatives and promote their proper application; and pursue the most advantageous disposition for his client. We agree with the People that trial counsel's request for probation was just one facet of his general argument for leniency. By arguing that probation was justified by the large number of mitigating circumstances, the unusual circumstances in this case, and the racially disparate treatment of Rios in regard to sentencing, trial counsel employed a comprehensive strategy to persuade the trial court to think favorably of Rios and impose a lenient sentence. In support of these arguments, trial counsel supported his sentencing brief with legal arguments including under the Racial Justice Act, and exhibits including 48 letters of support for Rios. He also argued extensively the facts of the case did not warrant a lengthy sentence as Rios did not fit the typical profile of a predator or groomer. Notwithstanding the fact that Rios was statutorily ineligible for probation, we disagree that trial counsel's preparation and presentation of this strategy demonstrates that he failed to perform basic research, understand the available sentencing alternatives, promote their proper application, or pursue the most advantageous disposition for his client.

Ultimately, we reject Rios's claim based on his failure to show he was prejudiced by trial counsel's request for leniency through probation. As noted above, trial counsel's strategy was comprehensive; Rios fails to identify any argument counsel could have but failed to make that would have supported a lower sentence. Indeed, trial counsel alternatively argued for a low term sentence based on the same factors he argued in support of probation. These arguments did not fall on deaf ears; in explaining its decision to impose upper terms and consecutive sentences, the court stated that it considered all the factors argued in mitigation and aggravation and read all the evidence submitted by both parties as well as the community. Rios has provided no persuasive argument that,

16

had counsel refrained from advocating for probation as part of his pitch for leniency, the court's analysis and conclusions would have been different. We simply fail to see how, especially in light of the strong efforts to obtain a low sentence for Rios, advocating for probation under alternative theories of remedies, prejudiced him.

IV

*Factor in Mitigation*

Rios contends that the trial court erred in concluding Rios's history of coaching other girls without sexual complaints was not a mitigating factor. We find no error.

A. Additional Background

During the sentencing hearing, the court stated the following:

"One of the mitigating factors asserted by the defendant is that he coached thousands of young women in his coaching career without a single sexual assault complaint. That assertion may be true as far as it goes, but it is based on an assumption that in the absence of prior complaints of sexual assaults there must not have been any such crimes committed.

"The letters that have been provided as to defendant's character certainly support that there may not have been such crimes committed. However, this is still an invitation to speculate on an assertion that Mr. Rios did not commit sexual misconduct with any other girls who he coached.

"The evidence in the present case is that in the pretext call when [Doe] made it clear to Mr. Rios that she needed to tell the truth about what happened, he practically begged her not to tell anyone, and he — that he had a family, and that she — the call closed with him telling her to call her [*sic*] before she did anything else, or words to that effect.

"From the beginning of his growing sexual interest in [Doe], Mr. Rios wanted his relationship with her kept secret and used social media that would cover his tracks. The question then follows, is the reason there were no other complaints is because Mr. Rios

17

succeeded in persuading other victims not to come forward as he attempted to do with [Doe]? I decline to engage in that kind of speculation. There is no evidence that Mr. Rios victimized any other female runners. But the absence of other sexual misconduct complaints against the defendant is not given as much weight as a mitigating factor as has been argued by the defendant and stated by others due to his conduct in this case."

B. Analysis

Contrary to the People's claim, Rios's argument is not forfeited. While a defendant cannot challenge the exercise of sentencing discretion for the first time on appeal (*People v. Scott* (1994) 9 Cal.4th 331, 356), here Rios claims that the court erred in rejecting, as a factor in mitigation, that there were no sexual complaints against Rios until Doe despite the fact that he has coached a myriad of other girls over multiple years. We conclude the issue is cognizable in this appeal.

The record demonstrates that, contrary to Rios's claim, the court did not reject the factor as one in mitigation. Rather, the court disagreed that the factor carried the amount of weight in mitigation as argued by Rios. The court accepted as true that there have not been any prior sexual complaints made against Rios but reasoned that the absence of complaints did not necessarily mean Rios had never acted sexually inappropriately with other girls he had coached. As the court noted, Rios was adamant that Doe refrain from disclosing his misconduct with her, which raised the question as to whether Rios successfully persuaded others to remain silent. The court concluded: "[T]here is no evidence that Mr. Rios victimized any other female runners. *But the absence of other sexual misconduct complaints against the defendant is not given as much weight as a*

*mitigating factor as has been argued by the defendant* and stated by others[4] due to his conduct in this case."

"Sentencing courts have wide discretion in weighing aggravating and mitigating factors. [Citation.] Indeed, a trial court may 'minimize or even entirely disregard mitigating factors without stating its reasons.' [Citation.] [¶] The California Supreme Court has held: ' "The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' " (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1258.)

To the extent that Rios's argument may be distilled to a claim that the sentencing court should have weighed the criteria differently and placed greater emphasis on the lack of prior sexual complaints as mitigation, Rios would be asking us to do exactly what the California Supreme Court has said we may not do — reweigh the sentencing factors. (*People v. Scott, supra*, 9 Cal.4th at p. 355 [appellate court will not "reweigh valid factors bearing on the decision below"]; *People v. Jordan* (1986) 42 Cal.3d 308, 317 ["The Court of Appeal . . . erred when it reweighed the circumstances in mitigation rather than limiting its review to whether the sentencing court abused its statutory discretion"].) The high court has made clear the only question before us is whether the sentencing court abused its discretion. Here, given the trial court's "lengthy and reasoned explanation for its sentence choice," we cannot say its decision was arbitrary and capricious. (*People v. Downey* (2000) 82 Cal.App.4th 899, 910.)

---

**4** The court stated it considered all 48 letters submitted by members of the community on Rios's behalf. Most, if not all, of these letters insist the conduct leading to the instant conviction was a single occurrence and not representative of Rios's character.

**DISPOSITION**

The judgment and sentence are affirmed.

_____/s/_____
EARL, P. J.

We concur:

_____/s/_____
BOULWARE EURIE, J.

_____/s/_____
WISEMAN, J.*

_____

\*      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.